672 So.2d 1161 (1996)
Carolyn RICHARDSON, Louis Richardson, Earvin Allen, and Jessie Bouyer, Individually and on Behalf of All Others Similarly Situated
v.
AMERICAN CYANAMID COMPANY.
No. 95-CA-898.
Court of Appeal of Louisiana, Fifth Circuit.
April 16, 1996.
Rehearing Denied May 17, 1996.
*1162 William F. Bologna, Habans, Bologna & Carriere, Gene W. Lafitte, Jr., New Orleans, for Defendant/Appellant.
Samuel M. Yonter, Kenner, for Plaintiffs/Appellees.
Before GAUDIN, BOWES, DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This is an appeal from a trial court ruling granting a motion for certification of these consolidated cases as a class action. For the following reasons, we affirm the ruling.
This action began as a result of an incident which occurred on the afternoon of August 11, 1992, in which sulfur dioxide was released into the air from start up procedures at a sulfuric acid facility in Waggaman, Louisiana owned by American Cyanamid Company. The noxious gas and smoke drifted across the Mississippi River and into the town of Kenner, prompting numerous calls from residents complaining to the Kenner Fire Department of a foul odor which caused various respiratory problems.
Four plaintiffs filed suit on August 14, 1992 pursuant to Louisiana Code of Civil Procedure Article 591, on their own behalf, and on the behalf of all other persons similarly situated. The petition further asserts that the named plaintiffs are typical of those of the class, and will fairly and adequately protect the interests of the class. Subsequent to the filing of the petition, about seven other lawsuits involving about 473 plaintiffs were filed claiming damages as a result of the *1163 incident. The cases were consolidated and a motion for certification for class action was entertained by the presiding trial judge. After a hearing on the matter, the motion was granted by a judgment which states in part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the "class" shall be defined as those individuals who incurred damages or injuries as a result of their presence within the below described geographic boundaries at the time of the emission:

Geographic Boundaries of the Class:
On the West Bank of the Mississippi River, in the area bounded by the Mississippi River on the north, the American Cyanamid Plant to the south, and on the east and west by the extension to the north of the east and west boundaries of the American Cyanamid Plant, on the East Bank of the Mississippi River, the geographic boundary shall be the area bounded by the city limits of the Town of Kenner to the east and west, to the north by the southern boundary of West Esplanade Avenue, and to the south, the Mississippi River.
The Court is of the opinion that based upon the evidence presented at the hearing, the areas exposed were to the north of the American Cyanamid Plant, and that the northern boundary should extend to West Esplanade Avenue since it was in this immediate vicinity that the northern most complaint was received by the Kenner Fire Department. The court is also of the opinion that based upon prevailing wind directions at the time of the emission, the east and west boundaries of the City of Kenner should be used to establish the east and west boundaries.
Defendant, American Cyanamid filed a motion for suspensive appeal.[1] In brief to this court, American Cyanamid argues that the trial court erred in granting class certification because the scientific evidence does not substantiate the plaintiffs' claim that the release of sulfur dioxide was significant enough to affect a large number of individuals. Thus, defendant argues, the number of individuals affected was insufficient to meet the requirement for class action certification. Alternatively, defendant argues the geographic boundaries created by the trial court in the certification order are too expansive. We have reviewed the entire record in this matter and are not persuaded by either argument.
Although the scientific evidence presented to the trial court by the parties is not in total agreement, it is not disputed that American Cyanamid released sulfur dioxide in excess of their permitted amount at about 4:00 P.M. on August 11, 1992.
The court heard testimony from Michael Zito, a captain in the Kenner Fire Department. Captain Zito stated that the department received numerous calls at several different Fire Stations from Kenner residents about 4:00 P.M. complaining of a noxious odor. The incidents were investigated, but the source of the odor was not discovered. It was later determined that the odor was caused by sulfur dioxide released from the American Cyanamid facility in Waggaman.
American Cyanamid timely notified government officials of the emission. The company subsequently submitted a Release Notification Written Follow-Up, Emergency Occurrence and/or Upset Notification Form, advising government officials of the incident. The documents submitted contain a graph of emissions which indicate a "spike" in the release of sulfur dioxide early in the incident, during which the concentration of sulfur dioxide released was the most intense.
Plaintiffs offered testimony from Francis Courtney, an air modeling expert, who testified that he used the documents filed by American Cyanamid, and weather conditions obtained from government authorities, to produce his original air model. He further testified that he received additional information from Dr. John Schneller, a scientist employed by American Cyanamid, which caused him to revise his estimates of the intensity of the pollution downward on the model. *1164 The model shows that the sulfur dioxide moved north, due to wind direction, and settled over the town of Kenner. The revised estimates show that the concentration of sulfur dioxide was 5.6 parts per million at a distance of one mile, 4.8 at two miles, 3.16 at three miles and 2.13 at 4 miles. To put those figures into perspective, Mr. Courtney explained that the odor of sulfur dioxide can be detected at just below one part per million. However, to be identified as sulfur dioxide, the concentration would have to be closer to three parts per million. In other testimony, Mr. Courtney stated that sulfur dioxide turns into sulfuric acid when mixed with water. Such a transformation would have occurred on the day of the incident since it had rained earlier in the day and the humidity was about 70% at the time of the release.
The plaintiffs also presented evidence from Dr. Thomas Schrager, a toxicologist, who testified that sulfuric acid is ten to twenty times more toxic than sulfur dioxide. Sulfuric acid can be formed in two ways. In an industrial setting where there is a lot of particulate matter in the air containing various metals, a chemical reaction occurs to convert the sulfur dioxide into sulfuric acid which then adheres to these minute particles. Such a substance can then be carried for much longer distances. Even without the metal component, sulfur dioxide is converted to sulfuric acid when released into moist air such as existed on the afternoon of August 11, 1992. Dr. Schrager testified that government regulatory agency standards for industrial workers will allow up to five parts per million. However, air quality standards for the community-at-large are 0.14 parts per million. He explained that the air quality standards differ because the circumstances of the industrial worker differ from the community which contains infants, elderly and infirm. In summary, Dr. Schrager opined that it was the conversion of the sulfur dioxide to sulfuric acid, rather than the release of sulfur dioxide into the air, which was the most significant problem, making this release a very significant potential health concern to the citizens of Kenner.
The trial court also heard testimony from various plaintiffs who described their experiences on the afternoon of August 11, 1992. Lois Simon who lives near the Mississippi River in Kenner, testified that she, as well as her son and daughter, smelled an unpleasant odor about 4:10 P.M., which Ms. Simon described as a mixture of bleach and ammonia. The fumes caused stomach upset, headaches, coughing and diarrhea. Roy Chester Johnson, also a resident of the area, testified he had to be hospitalized at St. Jude Medical Center for one week following the incident due to respiratory difficulties.
At the hearing, American Cyanamid presented testimony from Dr. John Schneller, who was responsible for the air modeling performed by the company. He testified that one of his jobs is commander of the emergency operation center for the facility. He offered a brief explanation of the process used by the plant in the production of sulfuric acid, and explained that the facility is permitted to emit sulfur dioxide at the rate of .03% of the total produced. The data of the company shows that the facility emitted a total of 305 pounds of sulfur dioxide over a period of seventy-five minutes at an inconsistent rate. Because that amount exceeded the permit, a report to government officials was made. Dr. Schneller testified that the representation made by American Cyanamid in its report of the emission shows a spike in which a higher level of emission occurred, and explained that the rates of emissions used on the report were simply an estimate based on certain calculations made from the available data. He refuted the calculation by plaintiffs' expert that the spike represented an emission of 34 pounds of sulfur dioxide per second. He stated that the stack would have exploded at that rate of emission. He presented a model which differs greatly from that of Mr. Courtney in concentration of sulfur dioxide and total geographic area affected. He classified the release as minimal and stated that is within the current perimeters of the company's new permit.
The applicable law is set forth in LSA-C.C.P. arts. 591(1) and 592. Those articles provide that:
(a) class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for *1165 all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class.
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
The burden of proof is upon the plaintiffs seeking to maintain the class action to establish that the statutory criteria have been met. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984). Using the above mentioned articles the supreme court has fashioned the following three elements which must be met for a class action to be certified:
1. A class so numerous that joinder is impracticable;
2. The joinder as parties to the suit one or more persons who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.
McCastle v. Rollins Environmental Services of Louisiana, Inc., supra; McGee v. Shell Oil Co. 95-CA-64,65,66,67 (La.App. 5th Cir. 6/28/95), 659 So.2d 812, writ denied 95-2476 (La. 12/15/95), 664 So.2d 457.
This Court, in a factually similar case, recently summarized the law in this area. In McGee v. Shell Oil Co, supra, 659 So.2d at 814 we stated:
To establish numerosity, the first requirement for a class action, it must be shown that the class is so numerous that joinder is impracticable. Although identification of all potential class members is unnecessary, the party seeking certification must establish a definable group of aggrieved persons. Farlough v. Smallwood, 524 So.2d 201 (La.App. 4th Cir. 1988), writ denied, 526 So.2d 810 (La.1988). The second requirement is to insure adequate representation of the absent class members. Becnel v. United Gas Pipeline Co., 613 So.2d 1155 (La.App. 5th Cir.1993). To establish a common character, there must be questions of law or fact common to the members of the class which predominate over any questions affecting only individual members.
The fundamental objectives of a class action device is the achievement of economies of time, effort, and expense. Thus, it must be decided whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device. Becnel, supra, at 1158. If an error is to be made, it should be made in favor of and not against the maintenance of the class action for it is always subject to modification should later developments so require. McCastle, supra, at 620; LSA-C.C.P. art. 593.1(B).
In this matter 473 plaintiffs have already filed suit against the defendant and all causes of action seek redress for physical damages which derive from the release of sulfur dioxide into the air. It is clear from the record that numerous additional claims will be brought. We take note of LSA-C.C.P. art. 593.1(B) which permits the trial court to alter, amend or recall its class certification, enlarge, restrict, or otherwise redefine the constituency of the class, the geography, or the issues to be maintained in the class action at any time before a decision on the merits.
Great discretion is afforded the trial court in the decision on certification of consolidated cases as class actions, and the decision will not be overturned absent manifest error. Adams v. CSX Railroads, supra; McGee v. Shell Oil Co. supra. We find a single trial would effectively and efficiently resolve the issue of liability common to the class, and the trial court correctly ruled accordingly.
AFFIRMED.
GAUDIN, J., dissents with reasons.
DUFRESNE, J., dissents.
*1166 GAUDIN, Judge, dissenting with reasons.
I respectfully dissent, being of the opinion that the testimony of plaintiffs' experts was seriously flawed. In addition, the setting of the geographic boundary of this action to include the entire city of Kennercalled a "wild guess" by the trial judgewas erroneous.
DUFRESNE, Judge, dissenting.
For reasons assigned by GAUDIN, J.
NOTES
[1] The certification of a class is an interlocutory judgment. However, where irreparable injury may result, the judgment is appealable. LSA-C.C.P. art.2083; Adams v. CSX Railroads 615 So.2d 476 (La.App. 4 Cir.1993).