750 So.2d 278 (1999)
Geraldine MAYHO, et al.
v.
AMOCO PIPELINE CO., Ashland Pipe Line Company, BP Oil Pipeline, Marathon Pipe Line, Southcap Pipe Line Company, Texaco Pipeline, Inc., and Shell Oil Company.
Nos. 99-CA-620 to 99-CA-624.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1999.
Writ Denied March 17, 2000.
*280 Roy F. Amedee, Jr., LaPlace, Louisiana, Attorney for Appellees.
Patrick A. Talley, Jr., Michael R. Phillips, New Orleans, Louisiana, Attorneys for Appellants.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Defendants/appellants Amoco Pipeline Co., Ashland Pipeline Company, BP Oil Pipeline, Marathon Pipeline, Southcap Pipeline Company, Texaco Pipeline, Inc., and Shell Oil Company (collectively "Shell") appeal the judgment of the trial court granting class certification to the suit. Plaintiffs/appellees Geraldine Mayho, et. al. (collectively "Mayho") filed a class action lawsuit against the defendants for damages allegedly sustained when an oil spill occurred at Shell's Capline facility in St. James. Shell alleges that Mayho has failed to prove all of the requirements for class action certification. For the following reasons, we affirm the judgment of the trial court.
On the morning of October 25, 1992, approximately 3,000 barrels of crude oil were released into the containment dyke of Shell's Capline facility when tank number 507 overfilled. None of the crude oil escaped the containment dyke and the cleanup process was begun immediately by Shell employees and contract workers hired by Shell. The clean-up continued until the evening of October 26, 1992, when all of the oil was returned to the system.
Employees of Shell monitored the air quality around the site from the time of the spill until the end of the clean-up process. Shell tested the air for its hydrogen sulfide content, the primary constituent being emitted from the crude oil. According to Shell, the air quality never reached hazardous levels.
Mayho alleges that the fumes from the oil spill caused great discomfort to the residents of the surrounding community. Mayho also alleges that the air quality reached hazardous levels and threatened the health and safety of the community.
Plaintiff Geraldine Mayho filed a petition for damages against Shell on July 19, 1993. Subsequently, four suits alleging a class action were filed by residents of St. James and consolidated with the original suit. On October 28, 1997 and February 13, 1998 a class action certification hearing was held before the Honorable Guy Holdridge of the Twenty-Third Judicial District Court. After reviewing the deposed testimony of Mayho's witnesses and hearing the testimony of Shell's witnesses, the trial court took the matter under advisement.
On December 15, 1998 the trial court issued its judgment with reasons granting the class action certification. In the judgment, the trial court defined the class as follows:
"Those individuals who incurred damages or injuries as a result of their presence within the following geographic boundaries at the time of the emissions. The area beginning at tank 507 at the Capline Facility in St. James Parish and extending in a southerly directions to Caze Street and this area being bounded on the east by the Mississippi River and the west by the end of each street between the tank site and Caze Street and the area beginning at tank 507 at the Capline Facility in St. James Parish and extending in a northerly direction to *281 Communi Street and this area being bounded on the east by the Mississippi River and the west by the end of each street between the tank site and Communi Street."
The trial court reserved the right to alter, amend or recall its ruling on class certification as provided for by LSA-C.C.P. art. 592(A)(3)(c). Shell filed a motion for suspensive appeal on January 14, 1999.[1] The matter is now before this Court for review.

LAW AND ANALYSIS
Shell alleges three assignments of error on appeal. In its first assignment of error, Shell alleges that the trial court erred in failing to exercise its "gatekeeping role" to ensure the reliability and relevance of expert testimony. In its second assignment of error, Shell alleges that the trial court erred in finding that the plaintiffs sustained their burden of proving numerosity, commonality and adequacy of representation when the record was devoid of any evidence on these issues. In its third and final assignment of error, Shell alleges that the trial court erred in finding that an action is sustainable where damages do not rise above the level of nuisance. These assignments of error are without merit and the judgment of the trial court must be affirmed.
The trial judge has vast discretion in determining whether to certify a class.[2] The appellate court will only decertify a class where there is an abuse of the trial judge's vast discretion.[3] If there is to be an error made, it should be in favor of maintaining the class action.[4] The class is always subject to modification should later developments during the course of the proceedings require.[5]
In its first assignment of error, Shell alleges that the trial court erred in failing to exercise its "gatekeeping role" and allowing the testimony of Mayho's expert witnesses into evidence. The standard for the admissibility of expert testimony was established by the United States Supreme Court in Daubert v. Dow Pharmaceuticals.[6] The Daubert test was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993), and applied to LSA-C.E. art. 702.
Daubert fashioned a more liberal standard which requires the trial court to act in a "gatekeeping" function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.[7] The considerations which bear on the preliminary assessment of validity of the evidence and its applicability are:
1. The "testibility" of the expert's theory or technique;
2. Whether the theory or technique has been subjected to peer review and publication;
3. The known or potential rate of error; and
4. Whether the methodology is generally accepted in the scientific community.[8]
Expert testimony should be admitted whenever the trial court, after balancing the probative value against its prejudicial effect, finds that the evidence is *282 reliable and will aid in a decision.[9] The four factors in the Daubert standard are guidelines to be used by the trial court in its determination of reliability of scientific evidence.[10] In order to be admitted, evidence must rise to a threshold of reliability.[11]
In the present case, Shell alleges that the testimonies of Dr. Schrager and Mr. Courtney should have been excluded from evidence in that they were not reliable. Shell moved to have the deposed testimony of both of the experts ruled inadmissible under LSA-C.E. art. 702 on the basis that their testimonies did not meet the standard of admissibility set forth in Daubert.
Mr. Courtney is an expert in the field of meteorology and air dispersion modeling. He prepared a report and an air dispersion model to describe the concentrations of hydrogen sulfide that were present in the area of the oil spill both on the first day and the second day of the clean-up. Dr. Schrager is an expert in the field of toxicology. He used the information provided by Mr. Courtney and formulated an opinion on the effects of such levels of hydrogen sulfide on the people in the surrounding area.
Shell alleges that Mr. Courtney's first report, which found very high emission rates from the crude oil, was incorrect. Therefore, Dr. Schrager's reliance on this information to form his conclusions was misplaced. The trial judge, in his vast discretion, allowed the introduction of the expert witness testimonies and stated that he would afford them the weight which they deserved. He found that their testimonies met the requirements of the Daubert test and were reliable. Shell has failed to prove that the Mr. Courtney's analysis lacked any probative value. This was not a jury trial, but rather a judge trial. The trial judge was able to give the testimonies their appropriate weight and value them accordingly. Shell has failed to prove that the trial court erred in admitting the testimonies into evidence or that the trial court afforded them undue weight. Absent a manifest abuse of discretion, the judgment of the trial court must be affirmed.
In its second assignment of error, Shell alleges that the trial court erred in finding that Mayho sustained the burden of proving numerosity, commonality, and adequacy of representation as required to certify a class action. The burden of proof is upon the plaintiffs seeking to maintain the class action to establish that the statutory criteria have been met.[12]
In determining whether to certify an action as a class action under Louisiana law, the following requirements are necessary:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class, and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.[13]
All three of the elements must be met for a class action to be appropriate and it is well settled that it is the plaintiffs' burden to prove each element, by a preponderance of the evidence.[14]
*283 The first requirement, that the persons constituting the class are so numerous as to make joinder impracticable, is often referred to as "numerosity".[15] The numerosity requirement is not met by simply alleging a large number of potential claimants.[16] To establish numerosity, i.e., "a class so numerous that joinder is impracticable," a determination must be made on the facts and circumstances of each individual case.[17] Although the identification of all potential class members is unnecessary, the party seeking certification should be able to establish a definable group of aggrieved persons.[18]
In the present case, there are several thousand people living within the geographic boundaries established by the trial court. Many of those people have filed a proof of claim with Shell. The five consolidated cases alone contain the names of hundreds of claimants to the suit. Shell has failed to prove that the trial court has abused its discretion by ruling that Mayho has provided sufficient evidence to establish the numerosity requirement by alleging damages suffered by a definable group of aggrieved persons within the geographic area.
The second requirement, "proper joinder," is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately.[19]
All of the class representatives live within the designated geographical area. All claim to have experienced adverse effects from the inhalation of hydrogen sulfide fumes released during the oil spill and subsequent clean-up. Shell alleges that the class representatives have not suffered recoverable damages, but rather were only inconvenienced by the nuisance. The trial court held that the class representatives were indicative of the class which they purported to represent. Shell has failed to prove that the trial court abused its discretion in this matter. One or more of the class representatives adequately represent the class itself.
Third, the plaintiffs must establish that a "common character" exists, that is, the question of law or fact common to the members of the class predominate over any questions affecting only individual members.[20] This requirement restricts the class action to those cases in which it would achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.[21] When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness.[22]
A "common character" of rights exists in this case. Each member of the class alleges that Shell is liable for any and all damages incurred from the release of hydrogen sulfide and benzine into the air as a result of the oil spill. While individual damages may vary, the "common character" of rights exists in order to justify a class action lawsuit. Shell has failed to prove that the trial court abused its discretion in this matter.
In its third and final assignment of error, Shell alleges that the trial court erred in finding that the Mayho had stated a cause of action for damages when the *284 damages did not rise above the level of nuisance. The judgment being reviewed by this Court on appeal is the class certification, not a judgment on the merits. The only issue to be considered by the trial court in ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate.[23] In determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits.[24] This assignment of error is without merit as the issue is not properly before this Court for review.
In summary, the trial court did not err in allowing the expert testimonies of Mr. Courtney and Dr. Schrager into evidence. The trial judge did not abuse his discretion in the role of "gatekeeper," as the testimonies of the two witnesses met the threshold requirements for reliability under the Daubert test. The trial court did not err in finding that Mayho sustained the burden of proving the requirements for class certification under LSA-C.C.P. arts. 591 and 592. The elements of numerosity, commonality, and adequacy of representation were established in the record. The trial court has reserved the right to alter, amend or recall its ruling on class certification at any time prior to a decision on the merits of the common issues as it deems necessary. Finally, the issue of whether the damages sustained by Mayho rise above the level of nuisance is not properly before the Court at this time and is not ripe for review. The judgment of the trial court must be affirmed.
AFFIRMED.
NOTES
[1] The certification of a class is an interlocutory judgment. However, where irreparable injury may result, the judgment is appealable. LSA-C.C.P. art.2083; Richardson v. American Cyanamid Co., 95-898 (La.App. 5th Cir. 4/16/96), 672 So.2d 1161; writ denied, 96-1556 (La.9/27/96), 679 So.2d 1344.
[2] Banks v. New York Life Ins. Co., 98-551 (La.12/7/98), 722 So.2d 990.
[3] Id. at 993.
[4] Johnson v. E.I. Dupont deNemours & Co., Inc., 98-229 (La.App. 5th Cir. 10/14/98), 721 So.2d 41.
[5] Id. at 44.
[6] 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[7] Perret v. Nelson, 98-393 (La.App. 5th Cir. 11/25/98), 722 So.2d 1118.
[8] Id. at 1123.
[9] Id.
[10] Id.
[11] Id.
[12] Richardson, supra at 1165.
[13] LSA-C.C.P. arts. 591 and 592; Clement v. Occidental Chemical Corp., 97-246 (La.App. 5th Cir. 9/17/97), 699 So.2d 1110; writ denied, 97-2884 (La.1/30/98), 709 So.2d 718; Pulver v. 1st Lake Properties, Inc., 96-248 (La. App. 5th Cir. 9/18/96), 681 So.2d 965.
[14] Clement, supra at 1113.
[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id.
[20] Id.
[21] Id.
[22] Id.
[23] Andry v. Murphy Oil, U.S.A., Inc., 97-0793 (La.App. 4th Cir. 4/1/98), 710 So.2d 1126; writ denied, 98-1204 (La.6/19/98), 719 So.2d 473.
[24] Id. at 1129.