836 So.2d 454 (2002)
Joe CLARK, et al
v.
TRUS JOIST MacMILLIAN, et al.
Nos. 02-676, 02-512.
Court of Appeal of Louisiana, Third Circuit.
December 27, 2002.
*456 James P. Dore', Gayla M. Moncla, Alan J. Berteau Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, for Appellant, James P. Dore'.
Thomas A. Banducci, Robert R. Ball, Stoel Rives, L.L.P., Boise, Idaho, for Appellant, Robert R. Ball.
William P. Crews, Jr., L.L.C., Natchitoches, for Appellee, William P. Crews, Jr.
Law Office of Sam Nelken, Natchitoches, for Appellee, Sam Nelken.
*457 Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS and BILLIE C. WOODARD, Judges.
COOKS, Judge.

STATEMENT OF THE CASE
Plaintiffs, several hundred in number, filed a class action claim in the 10th Judicial District Court, Parish of Natchitoches against Trus Joist McMillian. Plaintiffs allege they reside adjacent to or in the general vicinity of the Trus Joist plant and as a result have suffered physical injury and property damage resulting from toxic residue emitting from the Trus Joist facility.
Since 1985, Trus Joist has operated a plant which produces engineered wood products, including laminated veneer lumber and I-Joists used in residential and commercial construction. Laminated veneer lumber (LVL) is produced by feeding dry veneer into a laminated lumber machine which applies glue adhesives, stacks the veneer sheets, and hot presses the sheets together with a steam-heated press. I-Joists are produced by cutting LVL strips and strand board to appropriate size and feeding both components into an I-machine that applies glue adhesives, cuts the joist to the desired length and feeds the joists into a curing oven. Formaldehyde, phenol and methanol, volatile organic chemicals (VOC), are components of the glue used in the laminating process. These toxic chemicals are also contained in residual concentrations in any solid waste that results when the plywood is cut and shaped.
In 1985, Trus Joist obtained a Department of Environmental Quality (DEQ) permit to allow emission of VOC at 21.6 tons per year. Initially, Borden company, who supplies some of the glue used by Trus Joist, predicted the annual VOC emission would only be 9.9 tons per year. However, Borden determined that the heating process raised Methanol levels three times the predicted number to 30 tons per year.
In 1994, Trus Joist obtained a permit allowing emission of 41.24 tons per year an increase of 90% above the 1985 level. In June 1997, again Trus Joist obtained a permit allowing for 225.87 tons per year of VOC, an increase of 490% above the 1994 level. Permit levels were increased again in 1999 to 234.45 tons per year. Trus Joist contends that emission output has not significantly increased rather the new technology for measuring output is more accurate in recent years than in the past.
In addition to obtaining permits for the emission of chemical waste, Trus Joist obtained a permit for the emission of "solid" waste including sawdust. Solid waste emissions from 1985, when Trus Joist began operations, went from .84 tons per year to 168 tons per year.
Records of Trus Joist indicate frequent and repeated incidents of accidental release of emissions at the plant which were observed and recorded. Wilma Subra, plaintiff's expert, after examining Trus Joist records testified: "[T]he unit had a hole in it, was leaking something, wasn't sealed right where the sawdust or particulates, or whatever you want to call these solids, had been emitted into the air from breaks or leaks in the units."
Several plaintiffs, residents of the area around and adjacent to the Trus Joist plant, testified that sawdust from the plant fell like snowflakes upon them, their children, their homes and their cars. Testimony established the emissions from the facility were continuous from the fall of 1997 through the time of suit on June 23, 1998. Complaints were made to Trus Joist by some of the plaintiffs. In fact, plant manager, Michael Wolff, in October and November 1997, visited the home of plaintiff *458 Joe Clark to observe the sawdust. Joe Clark received a check from Trus Joist in the amount of $170.00 dated December 8, 1997 for the cleaning of his home.
As a result of the toxic emissions from Trus Joist, plaintiffs allege they have suffered medical problems including conjunctivitis, difficulty breathing, wheezing, coughing, bronchial pneumonia, and asthma. Dr. Margaret Wheat Carter, ophthalmologist, Dr. Olabisi Oshikanlu, pediatrician and Dr. Archie Breazeale, general practitioner, testified on behalf of plaintiffs.
Plaintiffs tendered Wilma Subra, as an expert in the field of chemical analysis and evaluation of chemicals in the environment. Ms. Subra testified exposure to formaldehyde can cause skin rashing, asthma-like symptoms, wheezing, coughing and bronchitis. Phenol can irritate the eyes, mouth, nose, throat and lungs causing shortness of breath. High and repeated exposure to phenol can cause liver, kidney and heart damage. Methanol irritates the eyes, can cause blurred vision or blindness, irritates the eyes, nose, mouth, throat and lungs. High concentrations can cause headaches, nausea, vomiting and dizziness. Ms. Supra opined the medical conditions associated with the chemicals used by Trus Joist are consistent with the medical conditions experienced by the community.
In 1999, Trus Joist made modifications to the plant by improving the wood handling system and replacing the relay system. In addition, a new truck dump bin was constructed and the fuel house was removed from service. Visible solid emissions from the Trus Joist plant have stopped.
In accordance with Louisiana Code of Civil Procedure 591 a class certification hearing was held on November 5-7, 2001 before the Honorable Monty L. Doggett. On March 7, 2002, the trial judge certified a class action and compelled the parties to mediate the claim. Trus Joist applied for supervisory writs and filed an appeal. We have consolidated both for hearing.

ASSIGNMENTS OF ERROR
Trus Joist asserts the following Assignments of Error:
1. The trial court erred in certifying a class in this action because plaintiffs failed to demonstrate common issues of law or fact, the predominance of common issues over individual issues, and the requirement of numerosity.
2. The trial court erred in failing to designate any class representatives for the class it certified.
3. The trial court erred in failing to define a class using objective criteria, including, but not limited to, geographical boundaries.
4. The trial court erred in allowing Drs. Archie Breazeale, Jr., Margaret Wheat-Carter, and Olabisi Oshikanlu to testify.
5. The trial court erred in ordering Trus Joist to participate in mediation when Trus Joist had timely objected to the original mediation order in accordance with La. R.S. 9:4103(A).

ASSIGNMENTS OF ERROR NUMBERS ONE-THREE: CLASS CERTIFICATION
Louisiana's class action statute (La.Code Civ.P. art. 591) was amended in 1997 to track the language of Federal Rule of Civil Procedure 23. The legislative revision to Article 591 was simply intended to codify existing jurisprudence and did not represent a change in the law. See, Ford v. Murphy Oil U.S.A., Inc. 96-2913 (La.9/9/97), 703 So.2d 542. Louisiana Code of Civil Procedure 591 provides in relevant part:

*459 One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interest of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
(Emphasis added.)
In addition to meeting the five requirements of Article 591 subsection (A), Article 591 subsection (B) lists other criteria one of which must be met in order to support a class action suit.
(B) An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
(Emphasis added.)
The court may consider the following when determining whether common questions of law or fact predominate and a class action is superior to other available legal methods:
(a) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation;
(Emphasis added.)
Plaintiffs must establish by preponderance of the evidence that each of the elements for class certification has been met. Duhe v. Texaco, Inc., 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, writ denied, 01-637 (La.4/27/01), 791 So.2d 637; Mayho v. Amoco Pipeline Co., 99-620 (La.App. 5 Cir. 12/15/99), 750 So.2d 278, writ denied, 00-110 (La.3/17/00); 756 So.2d 1143. The trial judge has vast discretion in allowing certification and his decision will not be reversed on appeal absent manifest error. Duhe, 779 So.2d 1070; Mayho, 750 So.2d 278; Hampton v. Illinois Central Railroad Co., 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435 (La.App. 1 Cir.4/1/99), 730 So.2d 1091; Richardson v. American Cyanamid Co., 95-898 (La.App. 5 Cir. 4/16/96), 672 So.2d 1161, writ denied, 96-1556 (La.9/27/96), 679 So.2d 1344. The court should err on the side of maintaining the class action since the judge may always modify or *460 amend the class at any time prior to a decision on the merits. La.Code Civ. P. art.592(3)(c). Mayho, 750 So.2d 278.
Trus Joist contends plaintiffs presented no air modeling analysis to prove emissions, other than sawdust, crossed the plant's fence line in amounts harmful to the community. Further, Trus Joist contends plaintiffs failed to demonstrate a minimal causation link between emissions from the Trus Joist plant and the injuries suffered by members of the class.
Louisiana's class action statute is designed as a procedural device to permit the institution and management of litigation involving a large number of similarly situated plaintiffs where joinder is impracticable. In determining whether a class action is appropriate it is not necessary for plaintiff to prove liability at the certification hearing. This Court in certifying a class of royalty owners stated:
Another basic principle is that, for purposes of certification, a court is not permitted to review the claims in a case on their substantive merit.
Duhe v. Texaco, Inc. 779 So.2d at 1078.
In Andry v. Murphy Oil, U.S.A., Co., 97-793 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, the appeals court examined the propriety of certification of a class of residents of St. Bernard parish. With regard to the likelihood of plaintiffs prevailing at trial, the court stated:
A class action is no more than a procedural device; it confers no substantive rights....The only issue to be considered by the trial court in ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of a class action the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits."
Andry, 710 So.2d at 1129.
In Mayho, 750 So.2d 278, the plaintiffs alleged that fumes from an oil spill by Shell Oil caused great discomfort to the residents of the surrounding community. Additionally, plaintiffs alleged that the air quality reached hazardous levels and threatened the health and safety of the community. Shell objected to the certification asserting plaintiffs failed to state a cause of action for damages because the alleged damages did not rise above the level of nuisance. The appeals court affirmed the certification stating:
The judgment being reviewed by this Court on appeal is the class certification, not a judgment on the merits. The only issue to be considered by the trial court in ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits.
Mayho, 750 So.2d at 284.
Trus Joist asserts class certification is improper because plaintiffs have not established that toxic omissions came exclusively from Trus Joist. Testimony established the presence of another factory in the area which emits smoke into the area. Trus Joist may assert this argument as a defense at trial. It is not necessary for plaintiffs to prove liability at the certification hearing.

Requirements of Louisiana Code of Civil Procedure Article 591(A).
Trus Joist contends the trial court erred in ordering class certification because plaintiffs failed to meet the threshold requirements *461 of the statute: numerosity, commonality, typicality, designation of class representatives and definition of the class using objective criteria. La.Code Civ.P. art. 591(A). Additionally, Trus Joist contends plaintiffs failed to demonstrate questions common to the class predominate over questions affecting only individual members. La.Code Civ.P. art. 591(B)(3).
This Court in the recent case of Duhe, 779 So.2d 1070, discussed the five threshold criteria found in Article 591(A).

I. Numerosity
Generally, this requirement is satisfied upon a showing the plaintiffs are so numerous that separate suits would unduly burden the courts and joinder of all claims is impractical. Duhe, 779 So.2d 1070; Johnson v. Orleans Parish School Board, 00-825 (La.App. 4 Cir. 6/27/01), 790 So.2d 734. Trus Joist contends plaintiffs have not sufficiently identified a definable group of aggrieved persons. We disagree. There are over 300 plaintiffs named in the petition and all live or have lived during the time period in question, in the area around Payne Subdivision, the old brickyard, or near the Trus Joist plant. The plaintiffs who testified at the hearing observed emissions coming from the Trus Joist plant and all allege as a result they have suffered bodily as well as property damage. In Andry, 710 So.2d at 1129, the court stated:
The numerosity element does not depend upon whether or not the plaintiffs can identify all potential class members. It is not essential that every member of a class can be identified prior to certification. In fact, difficulty in identifying the claimants is one of the factors that makes joinder impracticable and a class action appropriate.
We find plaintiffs in this case have satisfied the numerosity requirement.

II. Commonality
The commonality requirement is met if plaintiffs can demonstrate that there is "one issue, the resolution of which will affect all or a significant number of plaintiffs". Duhe, 779 So.2d at 1078. In this case, the common issue for all plaintiffs is whether emissions from the Trus Joist plant during the time period in question contained toxic chemicals of such a level to cause harm to plaintiffs and whether plaintiffs were in fact harmed. We find this issue decided for one class member will be decided for all. Trus Joist contends class certification must fail because plaintiffs have differing degrees of injury and assert disparate complaints and experiences. However, it is not necessary that all plaintiffs suffer identical damage and "individual questions of quantum do not preclude a class action when predominate liability issues are common to the class." McCastle v. Rollins Environmental Services of Louisiana, Inc. 456 So.2d 612, 620 (La.1984). This Court in Duhe, 779 So.2d at 1085, stated:
The mere fact that varying degrees of damage may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover, does not preclude class certification.
The Duhe court held once plaintiffs have demonstrated a course of conduct by the defendants giving rise to a "common nucleus of operative facts", and there are common issues of liability, differences in individual damages while relevant in quantum will not defeat class certification. We find plaintiffs in this case have met the commonality requirement.

*462 III. Class Representatives: Typicality and Adequate Representation

Typicality requires that claims of the class representatives are typical of all members. This court in Duhe, 779 So.2d at 1079, stated:
It satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory.
The court in Johnson v. Orleans Parish School Board, 790 So.2d at 742, elaborated on the requirements of typicality and adequate representation:
Louisiana jurisprudence does not require a `Noah-like' tabulation of class representatives and claims. The plaintiffs are not required to produce two or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class ... Furthermore, Louisiana jurisprudence interpreting the Class Action Statute does not require that the class representatives exhibit all the different types of possible injuries; it requires only that the claims of the class representatives be "a cross-section of, or typical of, the claims of all class members."
The test for adequate representation requires that class representatives have sufficient interest in the outcome of the case to insure vigorous advocacy of the cause. Additionally, it must be shown that counsel for the representatives are competent and experienced and will adequately represent members of the class. The record indicates class representatives were identified by letter of plaintiffs' counsel and five representatives testified at trial. While it appears from the record plaintiffs have established typicality and adequate legal representation, designation of the class representatives is not reflected in the certification order issued by the trial court. Also, the petition fails to identify the class representatives by name, though they were identified in the referenced letter dated May 15, 2001, which is found in the record. Considering the circumstances, we do not consider this failure fatal, nor do we find it necessary that we upset the trial court's certification to correct this error. We remand the case for amendment of the pleadings by plaintiffs to so designate the representatives identified in the letter dated May 15, 2001, and for amendment by the trial judge of the certification order to identify by name the class representatives.

IV. Objectiveness of Class Definition
This element requires the class be defined objectively in terms of ascertainable criteria for purposes of the conclusiveness of the judgment. It appears from the record members of the class live in the area of Payne Subdivision, the old brickyard or adjacent to the Trus Joist plant. However, we hold the trial court must properly identify the class according to a geographical area for purposes of conclusiveness of the judgment and we again remand to the court for that purpose. A remand to establish geographical boundaries does not necessitate reversal on the issue of class certification. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, writ denied, 97-0800, 97-0830 (La.4/8/97), 693 So.2d 147. La.Code Civ.P. art. 592(A)(3)(c) provides:
In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine *463 the constituency of the class or the issues to be maintained in the class action.

Requirements of Louisiana Code of Civil Procedure Article 591(B)(3).
Trus Joist contends plaintiffs failed to prove questions of law and fact common to members of the class predominate and a that class action is superior to other available methods for the fair and efficient adjudication of the claim.
McCastle v. Rollins Environmental Services of Louisiana, 456 So.2d 612 (La. 1984) examined the "common character" requirement which is now codified in 591(B)(3) of the 1997 statute. Plaintiffs in McCastle brought a class action suit alleging Rollins Environmental Services' chemical land farming operation near their homes polluted the air and caused personal and property damage. The plaintiffs requested certification of a class of 4000 residents of East Baton Rouge Parish who lived near a hazardous waste disposal facility owned by defendants. The plaintiffs alleged the land farming operations produced nauseating chemical fumes causing plaintiff's illness including burning eyes, sore throats and upset stomachs. The testimony at the certification hearing established the members of the class live in a low income area. The odors and fumes that were present on various occasions in the area were probably released from defendant's farm. The disposal of the hazardous wastes at the land farm facility was an on-going operation and the land farm chemical waste apparently was the cause of the odors and fumes affecting the residents. The effects of the fumes on individuals included tightness of chest, difficulty in breathing, headaches and tearing of the eyes. The testimony also indicates that the fumes were present in the area on numerous occasions and that the location and density of the fumes sometimes depended on the wind conditions. The McCastle court defined the "common character" requirement:
The requirement of "common character" restricts the class action to those cases in which it would achieve economics of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.
McCastle, 456 So.2d at 616.
In deciding whether a common character exists the trial court may consider whether maintaining the class action will vindicate public policies or legal rights. The Court identified two ways in which use of a class action may effectuate substantive policy:
First, to the extent that they open courts to claims not ordinarily litigated, class actions enable court to enforce policies underlying cause of action in circumstances where those policies might not otherwise be effectuated. Second, to the extent that they enable courts to see the full implications of recognizing rights or remedies, class action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying causes of action. Class action procedures are fair because courts are more likely to see both the significance of the claims of a plaintiff and the consequences of imposing liability upon a defendant, and thus are more likely to arrive at a substantively just conclusion.
McCastle, 456 So.2d at 618.
In this case, the plaintiffs all live in a low income area. Several testified at the certification hearing. Some plaintiffs suffered substantial damage to their property and person, however, many claims appear to be relatively minor. In McCastle, the Supreme Court recognized many small *464 claims, although valid, would not be brought as individual suits. The Court stated:
Although this fact must be considered in determining the propriety of a class action, or conclusion that most of the claims are relatively small is not intended to preclude any party from later proving a large claim. Nonetheless, since the claims do appear to be small, it is probable that a class action would open the courts to many claims which would not ordinarily be litigated because they could not be prosecuted economically as individual actions.
McCastle, 456 So.2d at 618.
The court in Andry, 710 So.2d 1126, affirmed class certification of plaintiffs who suffered damage as a result of an explosion and fire at an electrical plant. Many of the claims asserted were minor in nature. The Andry court noted:
[B]ecause of the potentially large number of de minimus claims, a class action would allow access to the courts for claimants who ordinarily might not be able to litigate due to the relative size of their claims when compared with the expense of litigation. We agree that the nature of the incident favors allowing this case to proceed as a class action. As explained by Justice Tate in Williams v. State, [350 So.2d 131 (1977)], when individual claims are small, disallowing a class action poses a serious threat to the loss of individual substantive rights....
Andry, 710 So.2d at 1130.
This Court in Duhe, 779 So.2d at 1086, stated:
The most dominant justification for a Rule 23(b)(3) class action is the vindication of the rights of groups of persons with negative value lawsuits ... This policy is at the very core of the class action mechanism ... It is often used as the sole rationale for finding superiority.
The plaintiffs in the present case live in a low income area adjacent to and in the vicinity of the Trus Joist plant. The glue used in the treatment and processing of the wood products contains toxic chemicals. Between 1985 and 1998 the levels of emission of toxic waste increased dramatically. The system for handling the release of toxic waste failed on a number of occasions. These accidents were reported by the company. The plaintiffs testified to the presence of sawdust on their property and testified as to their medical conditions. The plant manager on two occasions visited the home of one of the plaintiffs to view the sawdust. Trus Joist paid for cleanup of plaintiff, Joe Clark's home. Plaintiffs' expert testified as to the effects of the toxic chemicals on the community. Plaintiffs' doctors testified as to the affected residents' medical conditions. Modifications were made to the Trus Joist plant in 1999 and sawdust emissions stopped. We find plaintiffs have met the elements necessary to support a class action. The evidence, when viewed as a whole, presents common issues of law and fact.

ASSIGNMENT OF ERROR NUMBER FOUR: PHYSICIAN TESTIMONY
We find no merit to Trus Joist's argument that the trial court should have excluded the testimony of plaintiffs' doctors. The trial court is afforded wide discretion in matters pertaining to the taking of testimony in a certification hearing. We find he did not abuse his discretion.

ASSIGNMENT OF ERROR NUMBER FIVE: MEDIATION
We reverse the trial judge's order for mediation. La.R.S. 9:4103 states in pertinent part:
On motion of any party, a court may order the referral of a civil case for *465 mediation. Upon filing of an objection to mediate by any party within fifteen days after receiving notice of the order, the mediation order shall be rescinded.
It is undisputed that Trus Joist did not receive a copy of the November 13, 2001 order of mediation signed by the trial judge until February 5, 2002. Trus Joist made timely written objections. Whether Trus Joist was aware that plaintiffs would submit an order for mediation is not relevant. The statute is clear that a party must receive notice of the signed order. Since Trus Joist filed a timely objection, the trial judge's order is rescinded.

DECREE
Based on the foregoing, we affirm the class certification by the trial court. However, we remand for identification of class representatives and a designation of the geographical boundaries of the class. We rescind the trial judge's order for mediation. All costs of this appeal are assessed against Trus Joist McMillian.
AFFIRMED AND REMANDED FOR AMENDMENT.