# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-185

**CAJUNS FOR CLEAN WATER, LLC ET AL.**

**VERSUS**

**CECELIA WATER CORPORATION D/B/A CECILIA WATER CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82253
HONORABLE PAUL J. DEMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**John Michael Parker
L. Adam Thames
Taylor, Porter, Brooks & Phillips, LLP
P. O. Box 2471
Baton Rouge, LA  70821
(225) 381-0272
Attorneys for Defendant/Appellant
 Cecelia Water Corporation**

**Rachael S. Kellogg
Schafer & Schafer, LLP
328 Lafayette Street
New Orleans, LA  70130
(504) 522-0011
Attorney for Defendant/Appellant
American Alternative Insurance Corporation**

**Jacques P. Soileau
P. O. Box 344
Breaux Bridge, LA  70517
(337) 332-4561
Attorney for Plaintiffs/Appellees
Jacqueline Berard, Glenn Richardson, Laci Soileau and
Cajuns for Clean Water, LLC**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Jacqueline Berard, Brandi Berard[1] and Cajuns for Clean Water, LLC (Plaintiffs) filed suit against Cecelia Water Corporation d/b/a Cecilia Water Corporation (CWC) and their insurer, American Alternative Insurance Corporation, alleging damages as a result of poor water quality, no and/or low water pressure, arsenic contamination, bacterial contamination, and insufficient water supplied to meet ordinary daily needs of Plaintiffs. In the "First Supplemental and Amending Petition," Glenn Richardson and Laci Soileau joined as additional Plaintiffs adopting all claims made by the original Plaintiffs and seeking the same relief for damages. Plaintiffs filed a "Motion to Certify Class" seeking to convert this suit to a class action pursuant to the provisions of La.Code Civ.P. art. 591, asserting there are approximately 11,700 potential putative class members who have sustained injuries as a result of Defendant's alleged actions and inactions concerning their supplying water to the local population served by (CWC). After a full hearing on the matter the trial court rendered judgment granting Plaintiffs' motion for class certification.

The trial court defined the class as follows:

> All persons, businesses, or entities who belong to at least one of the following three groups, and who as a direct result of receiving their water service from Cecelia Water Corporation between December 1, 2010 and February 2015, have at least one of the following claims: mental and emotional distress; non-reimbursed personal expenses, non-reimbursed business expenses; loss of personal income; loss of business income; nuisance, annoyance, discomfort, and inconvenience; trespass; personal injury including fear of contraction of disease or illness; economic damages or property damage.

---

[1] By amended petition Brandi Berard was removed as a plaintiff in this matter.

1. Households and their residents who at any time between December 1, 2010 and February 28, 2015, were receiving their water supply from the Cecelia Water Corporation;

2. Owners and/or occupants of businesses, schools or health care facilities who at any time between December 1, 2010 and February 28, 2015, were receiving their water supply to that business, school, or health care facility from the Cecelia Water Corporation;

3. Lessor/Lessees of residential and/or commercial property who at any time between December 1, 2010 and February 28, 2015, were receiving their water supply to that property from the Cecelia Water Corporation.

The trial court also confirmed Jacqueline Berard and Glenn Richardson as representatives of the class and confirmed Jacques Pierre Soileau and W. Glenn Soileau as counsel for the Class. Further, the trial court prohibited any contact between defense counsel and the class representatives or class members regarding this class action suit "unless otherwise approved by [the] Court in advance." The trial court rendered an eight-page written reasons for judgment setting forth its findings of fact and detailing its reasons for concluding Plaintiffs satisfied the numerosity, commonality, typicality, and adequacy requirements of La.CodeCiv.P. art 591(A) as well as its reasons for identifying an objectively definable class of claimants. Plaintiffs also presented evidence satisfying "one or more criteria of La.C.C.P. art. 591(B)" according to the trial court.

Defendants appeal the trial court's order granting class certification and the trial court's definition of the class, asserting the trial court failed to "perform a rigorous analysis of the claims and defenses presented." They also assert Plaintiffs failed to establish commonality, predominance and superiority "because they cannot prove breach, causation, and damages on a class-wide basis." Additionally, Defendants maintain the trial court erroneously based its finding of "numerosity"

2

on the "number of potentially aggrieved parties" rather than on the "number of individuals actually aggrieved."

## LAW AND ANALYSIS

The supreme court has made clear "any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action." *McCastle v. Rollins Environmental Services of Louisiana, Inc.*, 456 So.2d 612,618 (La. 1984). In *Baker v. PHC-Minden, L.P.*, 14-2243 p. 12, 167 So.3d 528, 538 (emphasis added), the supreme court also set forth the applicable appellate standard of review:

> *A trial court has wide discretion in deciding whether to certify a class. Brooks,* 08–2035 at p. 10, 13 So.3d at 554. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. *Stobart v. State, through Department of Transp. and Development,* 617 So.2d 880, 882 (La.1993). However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard. *Dupree,* 09–2602 at p. 7, 51 So.3d at 680. *Implicit therein "is recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." Brooks,* 08–2035 at p. 11, 13 So.3d at 554.

After a full review of the record we cannot say the trial court's factual findings are manifestly erroneous. The record is replete with evidence which wholly supports the trial court's well-reasoned decision regarding class certification and its thoughtful definition of the class. Further, we find no abuse of discretion in the trial court's ultimate decision to grant certification of this matter as a class action. We are impressed with the trial court's detailed reasons for judgment and quote at length its findings:

> Plaintiffs, customers of Cecelia water Corporation ("Cecelia"), have brought this suit against Cecelia alleging continued problems with water quality and quantity. They have alleged that over the course of several years Cecelia has provided water of inadequate

quality and quantity. As of 2014 the Defendant Cecelia Water Corporation had roughly 3,776 customers.

As to water quantity, Plaintiffs have alleged that water is regularly rendered by Cecelia to their homes as low to no water pressure. The evidence shows that the Cecelia Water Corporation has had continual and ongoing problems with water pressure and providing water to its customers in adequate amounts. In 1996 an extensive engineering report was written documenting Cecelia's inability to meet demand and Cecelia's low water pressure problems. The 1996 report recommemnded that a new plant be built on the Western end of the system at the D'Augerau Road location. Recognizing this continuing low-pressure problem, Cecelia has continued to discuss building a new plant at the D'Augerau Road location over the years. However, to date no new plant has been built.

Despite the documented demand problems, Cecelia has continued adding water lines and customers to its system throughout the years. Cecelia applied for a rate increase to the Louisiana Public Service Commission (LPSC), again noting the demand problems with their system and their inability to provide adequate amounts of water to the existing customer base. The proposed rate increase would cover the cost of a new plant at the D'Augereau Road location. This solution had been identified and proposed sixteen (16) years earlier in the 1996 engineering report. The 2011 rate increase to build the new plant was ultimately granted by the LPSC. Cecelia customers have been paying for a new plant now for over five years now. (sic) That plant has still not even begun to be built.

In 2015 Cecelia applied for a second rate increase with the LPSC, again citing the problems with demand and the need to build a new plant at the D'augereau Road location. The LPSC denied Cecelia's second rate increase application. The LPSC stated that one rate increase had already been granted for the new plant and Cecelia had still not even begun the construction of that plant. Customers had bene paying for the new plant all the while.

Separately, in 2014 Cecelia applied for a USDA loan in order to build the new plant. With that loan application Cecelia's engineer, Dale Leblanc, submitted a 2014 engineering report again detailing the pressure and demand problems with the Cecelia water system. Dale Leblanc testified that he began working for Cecelia in 2006, and that he has been discussing building the new plant with the Cecelia board since he began working there.

Corroborating the continuous pressure and demand problems documented by Cecelia's records, the class representatives and customers across the system have testified to regular water pressure problems. Aside from the regular pressure problems generally, the

class representatives and other Cecelia customers have testified that they experienced specific no or low water pressure events in 2010, 2013, and 2014. During these events customers had little to no water. Customers could not bathe, flush toilets, and had to purchase bottled water. Alan Blanchard, a representative of St. Martin Parish School Board, testified that in 2014 all four of the public schools in Cecelia had to close because of low water pressure. Cathy Miles-Castille, the owner of the Holiday Inn in Cecelia, testified that many of the businesses around her hotel had to close in 2014 due to the low or no water pressure event. She testifies that her customers had no water and had to get buckets of water from the hotel swimming pool in order to flush their toilets. She also testified that she had to load up all of the hotel linens and bring them to a laundromat for cleaning during this event. Further, she had to supply all of her customers with bottled water during the periods of outage.

The customers' testimony describing these events are consistent with Cecelia's own records indicating that in 2014 two separate Boil Advisories had to be issued due to the low-pressure events. Additionally, in 2014 Cecelia sent out a low-pressure letter to all of its customers detailing the low-pressure problems. The letter explained that the low-pressure event was the result of tremendous strain on the system, which resulted in malfunctioning wells at the plant. Likewise, Cecelia's board minutes document a 2013 low pressure event that is consistent with the customers' testimony who have indicated that they experienced a low or no water pressure event during this time period. Cecelia also sent out a water conservation letter to all customers during this time period directing its customers to conserve their water usage.

Customers testifying to the pressure problems, also testified to discolored water, excessive water sediments, and foul-smelling water. Customers and business owners have testified to having ice machine damage because of excessive water sediment, and clothes ruined because of the discolored water. Customers also testified that they were concerned with the levels of Arsenic in Cecelia's water. Cecelia has been issuing water quality reports ("Consumer Confidence Reports") to all of its customers since at least 2010 indicating that the Arsenic in Cecelia's water exceeds regulatory levels. These annual reports also warn all customers that consuming water with Arsenic could cause cancer and other serious health problems. Some customers have testified that they buy bottled water in order to avoid these health risks. The Court finds the testimony of these customers credible and consistent with Cecelia's records.

The trial court then continued to explain its finding based on the evidence presented in each of the categories set forth on La.Code Civ.P. art. 591. Our

5

review of the record discloses no abuse of discretion by the trial court. The record supports more than a reasonable basis for the findings of fact chronicled in accurate detail by the trial court as set forth above. In fact, the most compelling evidence and testimony supporting the reasonableness of the trial court's findings is supplied by Cecelia's own records and witnesses.

In its various engineering reports, applications for rate increases, and boil water notices Cecelia acknowledged its "problems with low pressure" system-wide and that both its storage and distribution/treatment capability "is not adequate to handle demand." It further acknowledged its system "does not meet the current Louisiana Department of Health Hospital requirements" nor is the system up to the "Ten States Standards" and is "not adequate to serve all of [its] existing customers." Cecelia further acknowledged that the current demand for water by its customers "has exceeded supply of *both pressure and quantity*" requiring it to purchase water from its neighbor, Breaux Bridge. But, it admits in its reports, that even this effort has not resulted in "increase[ing] the total system pressure." In fact, Cecelia's own engineering report refers to its purchase of water from Breaux Bridge as "only a temporary solution" to its multiple problems and lack of ability to adequately and safely supply its customers. Two boil water notices were issued to *all of its customers* after the Louisiana Department of Health and Hospitals "document[ed] low water pressure in the water system." Additionally, minutes of Cecelia's board meeting chronicle issues with low water pressure. Finally, even Cecelia admits that if the evidence at trial shows that Arsenic contamination is in fact present at levels exceeding regulatory standards, this poses a serious health threat to all who have consumed water supplied by Cecelia during the operative time frame defined by the trial court. Clearly, class action, as a procedural device,

is appropriate in this case where such pervasive system-wide problems admittedly exist and affect all customers.

> Louisiana courts are authorized to reference both federal and state class action jurisprudence in the interpretation and application of the statutory requirements for class actions. *Duhe v. Texaco, Inc.,* 99-2002 (La.App. 3 Cir. 2/7/01); 779 So.2d 1070, *writ denied,* 01-0637 (La.4/27/01); 791 So.2d 637. Moreover, "the trial court is given 'wide latitude' in considerations that require an analysis of the facts relative to the prerequisites for class certification in a given case, and its decision on certification must be affirmed unless it is manifestly erroneous." *Parry v. Adm's of Tulane Educ. Fund,* 98-2125, p. 3 (La.App. 4 Cir. 6/30/99); 740 So.2d 210, 212, *writ denied,* 99-2297 (La.11/12/99); 750 So.2d 197, *citing Adams v. CSX R.R.,* 615 So.2d 476, 481 (La.App. 4 Cir.1993).

*West v. G & H Seed Co.*, 01-1453 p. 8 (La. App. 3 Cir. 8/28/02), 832 So. 2d 274, 281(emphasis added).

The trial court went to great lengths to explain its application of the law to the facts presented carefully and methodically explaining its finding of numerosity, commonality, typicality, and adequacy all as set forth in La.Code Civ.P. art 591 which provides as follows:

> A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of law or fact common to the class.
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (4) The representative parties will fairly and adequately protect the interests of the class.
>
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into

the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

B.  An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or

(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.

Defendants assert the trial court failed to "perform a rigorous analysis of the claims and defenses presented." Our review of the record finds no support for this contention. To the contrary, as demonstrated in the lengthy quote from the trial court's reasons for judgment, all of which are amply supported by the record as we have detailed above, it is clear to us the trial court delved deeply into Plaintiffs' allegations, heard a significant amount of testimony, and viewed compelling documentary evidence, especially Cecelia's own documents. Defendants also assert Plaintiffs "cannot prove breach, causation, and damages on a class-wide basis" and therefore fail to establish commonality, predominance and superiority. The Louisiana State Supreme Court, in *Baker*, 167 So.3d at 537 (emphasis added, footnote omitted) held:

> The only issue to be considered by the trial court when ruling on certification, and by this Court on review, *is whether the case at bar is one in which the procedural device is appropriate.* In determining the propriety of such action, **the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits**, but whether the statutory requirements have been met. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

Additionally, Defendants maintain the trial court erroneously based its finding of "numerosity" on the "number of potentially aggrieved parties" rather than on the "number of individuals actually aggrieved." Neither the Code of Civil

Procedure, jurisprudence, nor common sense support this proposition. As we have already noted, the United States Supreme Court directs us that in our review of the trial court's granting class action status our focus is on *"whether the case at bar is one in which the procedural device is appropriate." Id.* The record supports the trial court finding that the alleged problems with this water system are *system-wide* and thus affects some *3,776 customers* throughout the Cecelia water system. There is no question here that numerosity is satisfied and that this is the very kind of litigation best addressed through the procedural mechanism of class action. In *West*, 832 So.2d at 284-85 (emphasis added), we explained why this very argument underscores the appropriateness of class certification:

> *Every member of the potential class has not been identified; however, this does not serve to defeat certification. To the contrary, it makes certification more appropriate.* Indeed, in *Royal St. Grocery, Inc. v. Entergy New Orleans, Inc.,* 99, 01-0374 (La.4/12/01); 789 So.2d 594, because of difficulty identifying all aggrieved parties, the court found joinder impractical where there was evidence of 4,200 potential class members, but where only 62 aggrieved parties had been already identified for inclusion. In *Johnson v. Orleans Parish Sch. Bd.,* 00-0825, 00-0826, 00-0827, 00-0828 (La.App. 4 Cir. 6/27/01); 790 So.2d 734, *writs denied,* 01-2216, 01-2225, 01-2215 (La.11/9/01); 801 So.2d 378, 379, the court reviewed the certifiability of a class action by former school students and employees for damages from exposure to hazardous and toxic substances. The fact that *only one aggrieved plaintiff had come forward* out of potentially thousands was irrelevant to the court, since testimony showed that the school served between 800 and 900 students per year during the time in question.

> We note that our determination is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding multiplicity of lawsuits, financial resources of class members, and the size of their individual claims. *Johnson v. E.I. Dupont deNemours & Co., Inc.,* 98-229 (La.App. 5 Cir. 10/14/98); 721 So.2d 41.

Many of Cecelia's consumers may well be affected to differing degrees individually, but Plaintiff's expert evidence and Defendants' own documents

clearly establish the problems alleged by Plaintiffs are system-wide. This means it affects all of Cecelia's customers, both individual residents as well as local schools, businesses and churches. Evidence was presented demonstrating that through the years individual residents as well as witnesses for the school and the Holiday Inn hotel all complained of problems with low or no water pressure and the resulting difficulties including health risks, inconvenience, and added costs. It may be that some consumers are unaware of the problems with the water system or the cause of the problem or it may be that some will not want to file a lawsuit or even join in this class action. But that is not determinative of the question of certification of this litigation as a class action. Defendants say that predominance is also not met here for the interwoven reason that damages suffered by Plaintiffs and class members are or will be individualized and thus prevents a finding of common issues that will be resolved in the class action. This argument, too, is without merit. The allegations of arsenic contamination endangering the health of any and all who drank or bathed in the water, poor water quality, and low or no water pressure resulting in what are really common inconveniences and a common threat to the health of all of the customers results from the admitted systemwide problem. In *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 (2005) (emphasis added) the federal court of appeal rejected this argument:

> In similar situations, numerous courts have recognized that *the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate. See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir.2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues"), *cert. denied sub nom. Visa U.S.A. Inc. v. Wal–Mart*

*Stores, Inc.,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 298 (5th Cir.2001) ("Although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue"); *Tayloe,* 67 F.R.D. at 450 ("[I]n the event of a finding of liability, *damages might have to be established on an individual basis. This fact alone, however, does not preclude class action treatment."*). We agree. Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages. Thus, the district court did not abuse its discretion in certifying the class.

We also rejected this argument in *West* and in *Clark v. Trus Joist MacMillian*, 02-676 (La.App. 3 Cir. 12/27/02). 836 So.2d 454, *writ denied*, 03-275 (La.4/21/03), 841 So.2d 793. In *West*, 832 So.2d at 287, we said:

> **The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. A common question is defined as one which when answered as to one class member is answered as to all of them."** *Duhe,* 779 So.2d at 1078 (citations omitted**). Moreover, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover *does not* preclude class certification."** *Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc.,* 99-494, p. 3 (La.11/12/99); 759 So.2d 755, 756.

The defendants in *Clark*, like the Defendants here, contended plaintiffs failed to prove "questions of law and fact common to members of the class predominate and a that (sic) class action is superior to other available methods of the fair and efficient adjudication of the claim." *Supra*. at 463. Defendants here also argue that some of their customers, such as those whose affidavits Defendants presented at the hearing, have suffered little or no adverse effects from Cecelia's no or low pressure problem and that those who claim to have suffered damage should proceed to sue individually. They also complain that few customers have come forward to date to file suit or join in the present suit. We reject Defendants'

argument here based on the rationale we explained in *West* and *Clark*, 836 So.2d at 463-64:

> In deciding whether a common character exists the trial court may consider whether maintaining the class action will vindicate public policies or legal rights. The Court [in *McCastle v. Rollins Environmental Services of Louisiana*, 456 So.2d 612 (La. 1984)] identified two ways in which use of a class action may effectuate substantive policy:
>
>> First, to the extent that they open courts to claims not ordinarily litigated, class actions enable court[s] to enforce policies underlying cause of action in circumstances where those policies might not otherwise be effectuated. Second, to the extent that they enable courts to see the full implications of recognizing rights or remedies, class action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying causes of action. Class action procedures are fair because courts are more likely to see both the significance of the claims of a plaintiff and the consequences of imposing liability upon a defendant, and thus are more likely to arrive at a substantively just conclusion.
>
> *McCastle,* 456 So.2d at 618.
>
> In this case, the plaintiffs all live in a low[-]income area. Several testified at the certification hearing. Some plaintiffs suffered substantial damage to their property and person, however, many claims appear to be relatively minor. In *McCastle,* the Supreme Court recognized many small claims, although valid, would not be brought as individual suits. The Court stated:
>
>> Although this fact must be considered in determining the propriety of a class action, or conclusion that most of the claims are relatively small is not intended to preclude any party from later proving a large claim. Nonetheless, since the claims do appear to be small, it is probable that a class action would open the courts to many claims which would not ordinarily be litigated because they could not be prosecuted economically as individual actions.
>
> *McCastle,* 456 So.2d at 618.
>
> The court in *Andry* [*v. Murphy Oil, U.S.A., Co.*, 97-793 (La.App. 4 Cir. 4/1/98),] 710 So.2d 1126, affirmed class certification of plaintiffs who suffered damage as a result of an explosion and fire

at an electrical plant. Many of the claims asserted were minor in nature. The *Andry* court noted:

> [B]ecause of the potentially large number of *de minimus* claims, a class action would allow access to the courts for claimants who ordinarily might not be able to litigate due to the relative size of their claims when compared with the expense of litigation. We agree that the nature of the incident favors allowing this case to proceed as a class action. As explained by Justice Tate in *Williams v. State,* [350 So.2d 131 (1977)], when individual claims are small, disallowing a class action poses a serious threat to the loss of individual substantive rights....

*Andry,* 710 So.2d at 1130.

> This Court in *Duhe,* 779 So.2d at 1086, stated:

> The most dominant justification for a Rule 23(b)(3) class action is the vindication of the rights of groups of persons with negative value lawsuits ... This policy is at the very core of the class action mechanism ... It is often used as the sole rationale for finding superiority.

We are convinced that this record supports the trial court's findings and we find the procedural requirements for certification of this suit as a class action are fully met. We also find the trial court's class definition sufficiently identifies an objectively definable class of claimants. The judgment of the trial court is affirmed in all respects and costs of this appeal are assessed against Defendants.

**AFFIRMED.**