957 So.2d 901 (2007)
Nickey L. MARSH, Plaintiff-Appellee
v.
USAGENCIES CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 42,176-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
*904 Stone, Pigman, Walther, Wittmann, by Wayne J. Lee, Lesli D. Harris, New Orleans, Hudson, Potts & Bernstein, by Mark J. Neal, Monroe, for Appellant.
Neblett, Beard & Arsenault by Richard J. Arsenault, John R. Whaley, Alexandria, Travis M. Holley & Associates, by Travis M. Holley, Bastrop, for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
LOLLEY, J.
USAgencies Casualty Insurance Company ("USAgencies") appeals a judgment from the Fourth Judicial District Court, Parish of Morehouse, State of Louisiana, which granted the motion for class certification filed by Nicky L. Marsh ("Marsh"). For the following reasons we affirm the trial court's judgment.

FACTS
This lawsuit originated as an individual claim for property damage and personal injuries by Marsh following an automobile accident involving his 2001 Mazda Tribute. Marsh's vehicle was insured by USAgencies. Marsh had purchased his vehicle eight months before the accident, and it cost him approximately $22,000.00.
Following the accident, a USAgencies appraiser inspected Marsh's vehicle and declared it a total loss. Using the National Automobile Dealers Association Guidebook, the appraiser determined the vehicle's base average value. Then, after inspecting and photographing the vehicle, the appraiser made several value adjustments based on the vehicle's condition Marsh's vehicle had high mileage (20,000 miles) and was "very dirty inside." Based on all of these criteria, the vehicle's pre-accident actual cash value ("ACV") was determined to be $16,875.00. Marsh was contacted by an adjuster and given this figure, and although he initially agreed to the ACV, he later refused to settle the claim for the amount offered. In reaching the ACV, USAgencies downwardly adjusted Marsh's total $75.00 for "detail/prep." According to Marsh, this amount, sometimes taken by USAgencies in the adjustment process, represented the cost to clean a totaled car to get it ready to sell on a used car lot; however, Marsh argues that his vehicle was never detailed because it was totaled and never made it to the used car lot. USAgencies maintains that this deduction is made because the condition of a vehicle impacts the ultimate final value of that vehicle. Marsh filed suit against USAgencies seeking compensatory and punitive damages. He later amended his petition, adding the class action claims. After a two-day class certification hearing, the trial court entered its judgment for class certification, designating Marsh as class representative and certifying the class to be:
All insureds of USAgencies whose claims are contained within that "pool of claims" previously identified in this proceeding (approximately 9,000 more or less) from which the "random sample" was drawn, as well as any additional first-party total loss property damage claims occurring since that time until the present, in which a detail or prep work fee, charge, assessment or factor was used, assessed or in any way operated in *905 or was applied to the process of adjustment of such claim by or on behalf of USAgencies with that insured to reduce the insured's recovery.
USAgencies' appeal of the judgment ensued.

DISCUSSION
Louisiana law requires that in order to meet class certification requirements, a plaintiff must meet all of the requirements of La. C.C.P. art. 591(A) and fall within one of the subsections of art. 591(B). Howard v. Willis-Knighton Medical Center, 40,634 (La.App.2d Cir.03/08/06), 924 So.2d 1245, writs denied, XXXX-XXXX (La.06/14/06), 929 So.2d 1268 and XXXX-XXXX (La.06/14/06), 929 So.2d 1271; Edmonds v. City of Shreveport, 39,893 (La. App.2d Cir.08/31/05), 910 So.2d 1005; Defraites v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX (La.App. 5th Cir.01/27/04), 864 So.2d 254, writ denied, XXXX-XXXX (La.03/12/04), 869 So.2d 832. Louisiana C.C.P. art. 591 states:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;

*906 (e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
The burden of establishing that the statutory criteria are met falls on the party seeking to maintain the class action. Howard, supra. A trial court has wide discretion in deciding whether to certify a class and the decision will not be overturned absent a finding of manifest error or abuse of discretion. Id. However, any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification, if later developments during the course of the trial so require. Id., citing McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984).

Marsh's substantive claims
Initially, USAgencies argues that the trial court erred in refusing to consider the substantive elements of Marsh's cause of action and the individualized proof necessary to establish liability. USAgencies relies on this court's pronouncement in Howard, supra that:
Determination of the suitability of a claim for class action certification demands an understanding of the factual and legal issues that will arise from the plaintiffs cause(s) of action. "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." (Citations omitted).
Whereas we accept that statement as true, at the same time we emphasize that the only issue to be considered by the trial court in ruling on class certification, and by this court on review, is whether the case at bar is one in which the procedural device of a class action is appropriate. Obviously, when making such a determination, it is necessary to consider the particular facts and circumstances of the case before us. See Rapp v. Iberia Parish School Bd., 2005-833 (La.App. 3d Cir.03/01/06), 926 So.2d 30, writ denied, XXXX-XXXX (La.09/22/06), 937 So.2d 386. However, that analysis of the underlying facts and circumstances is only made in connection with how those underlying facts and circumstances pertain to the inquiry under La. C.C.P. art. 591. In determining the propriety of a class action, the trial court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits. Robichaux v. State ex rel. Dept. of Health and Hospitals, XXXX-XXXX (La.App. 1st Cir.12/28/06), 952 So.2d 27, citing, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) and Miller v. Mackey Intern., Inc., 452 F.2d 424 (5th Cir.1971).
Here, the trial court noted in its reasons for certifying the class that:

*907 The Court must also note what is not at issue in this ruling. The merits of the respective claims and the potential defenses thereto are not presented at this time for the Court to pass upon. In that regard, the Court notes that the defense presentation of evidence during the certification hearing seemed inordinately directed towards the merits of the case. The jurisdictional pronouncements could not be more clear that the respective merits of the claims or of the potential defenses are not at issue in considering whether or not to certify or maintain a proceeding as a class action, except only insofar as such evidence may bear upon on or more the factors to be considered by the Court under Article 591. (Emphasis original).
We agree. In determining class certification, the trial court was not called to ascertain the viability of Marsh's cause of action against USAgencies, but whether, considering the claims made by Marsh, the cause of action would endure scrutiny in certifying the class under the requirements of La. C.C.P. art. 591.
Marsh claims that USAgencies acted arbitrarily and capriciously when it reduced his (and other insureds') recovery for a "detail/prep" charge on his (and their) total loss vehicle(s). He also claims that this "detail/prep" charge violated La. R.S. 22:1220(B)(5) and La. R.S. 22:658, in effect, because USAgencies charged the insured for work that was never performed or intended to be performed. The trial court noted that "USAgencies' focus on the process of determining the actual cash value of the vehicle is misplaced and overlooks the question of the propriety of the operation of the detail or prep adjustment factor in that process. . . ." We agree with the trial court's assessment of Marsh's claim against USAgenciesi.e., his claims do not focus on the process USAgencies implemented in valuing the Marsh's totaled vehicle. See Defraites, supra. Rather, his claims center on the propriety of USAgencies' actions in assessing a "detail/prep" fee in assigning the value. As it pertained to this very specific action, the trial court ultimately would not be called upon to make a case-by-case evaluation of how a claim was adjusted, but rather, it would only have to ascertain whether it was proper for USAgencies to charge a "detail/prep" fee for a car that USAgencies determined to be a total loss. We conclude that the trial court did properly consider the factual and legal issues presented by Marsh's claims as they pertained to class certification. Perhaps the level of legal scrutiny sought by USAgencies would be more appropriately addressed in an exception of no cause of action or a motion for summary judgment. Simply, the trial court and now this court on review, are not called at this juncture to evaluate the merits or the viability of Marsh's claims. What is only at issue is whether procedurally this claim warrants class status. We find no error by the trial court in this regard.
USAgencies further argues that class certification in this case was in error, because Marsh seeks penalties under La. R.S. 22:658 and 22:1220, which would entail specific case inquiries. However, we consider the reliance placed by USAgencies on the case law cited both misplaced and overreaching. Obviously, we recognize the line of jurisprudence noting that the determination of whether an insurer acted in bad faith turns on the facts and circumstances of each case. See e.g., Smith v. Audubon Ins. Co., 1995-2057 (La.09/05/96), 679 So.2d 372. What the jurisprudence dictates, however, is what might be "bad faith" in one particular case (here, the Marsh case) is not necessarily going to be "bad faith" in another case dealing with a *908 relationship between a different insured and insurerall of the facts and circumstances have to be considered. In this case, the alleged arbitrary and capricious act was USAgencies' across-the-board policy assessing a "detail/prep" fee for many total loss vehiclesa charge for services that were allegedly not performed. Such an act conceivably could be considered "bad faith," which is a determination for another day. That said, an ultimate finding of bad faith in this case would not be a standard that would be applicable necessarily to another insurer in another case. Thus, the determination to be made under La. R.S. 22:658 and 22:1220 in this case would not be applied to another insurer without a careful consideration of the individual facts and circumstances. Again, this assignment of error by USAgencies is without merit.

Article 591 Requirements
As to the requirements for class certification, USAgencies finds fault with the trial court's determination under both subsections (A) and (B) of La. C.C.P. art. 591.
Article 591(A)
As stated, La. C.C.P. art. 591(A) presents five threshold requirements; however, USAgencies only disputes the trial court's findings as to three of them: commonality, adequacy, and typicality.
Commonality
Article 591(A)(2) requires for class certification that there be questions of law or facts common to the class. Some courts have stated that the test of commonality is not a demanding one and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. Howard, supra, citing Duhe v. Texaco, Inc., 1999-2002 (La.App. 3d Cir.02/07/01), 779 So.2d 1070, writ denied, XXXX-XXXX (La.04/27/01), 791 So.2d 637; Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620 (5th Cir.1999), cert. denied, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000). A common question is defined as one which when answered as to one class member is answered to all of them. Howard, supra.
Here, the trial court considered the arguments presented by the opposing sides. USAgencies maintained that a case-by-case analysis would have to be made in order to determine the adjustment process associated with each class member. On the other hand, Marsh submitted, and the trial court accepted, that several common questions existed for all members of the class. We agree.
Clearly, considering the claims made by Marsh, there are two questions that are common to the class. First, was it appropriate for USAgencies to reduce its insureds' recovery on a total loss vehicle for a "detail/prep" fee when the totaled vehicle is never detailed or cleaned? Second, does this practice by USAgencies constitute arbitrary and capricious behavior in the adjustment process, violating La. R.S. 22:1220(B)(5) and/or La. R.S. 22:658? USAgencies muddies the waters by arguing that each individual adjustment would have to be analyzed. We do not see that to be the case. Marsh is not disputing the method of vehicle valuation in general, but only questions one allegedly common factor present for the valuation of totaled vehicles for all class membersi.e., were they assessed a "detail/prep" fee for their totaled vehicle that was never actually detailed or prepped? Answering such a question would not entail extreme individual or case-by-case inquiry. The class members clearly have commonality; therefore, we find no error by the trial court as to this element.
*909 Adequacy and Typicality
The two elements of adequacy and typicality under La. C.C.P. art. 591(A) are often addressed together. Adequacy is a principal requirement for certification where the class representatives must be adequate for the class. The following factors may be relevant to the adequacy of representation inquiry:
(1) The representative must be able to demonstrate that he or she suffered an actual-vis-à-vis hypothetical-injury;
(2) The representative should possess first-hand knowledge or experience of the conduct at issue in the litigation;
(3) The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and
(4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.
Howard, supra at 1265, citing Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085, 1117 (1998).
As to typicality, the representatives' claims must be a cross section of, or typical of, the claims of the other class members. Watters v. Department of Social Services, XXXX-XXXX (La.App. 4th Cir.04/19/06), 929 So.2d 267, writs denied, XXXX-XXXX, XXXX-XXXX (La.09/29/06), 937 So.2d 870. Typicality for class action certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory. Watters, supra, citing Andrews v. Trans Union Corp., 2004-2158, (La.App. 4th Cir.08/17/05), 917 So.2d 463, 469.
Here, Marsh's claims only pertain to one aspect of the valuations made by USAgenciesthe "detail/prep" feeand one type of vehicletotal loss vehicles. He is only interested in USAgencies' practice or conduct in valuing total loss vehicles, specifically whether those insureds were assessed a "detail/prep" fee. There need not be any regard as to the model of vehicle being valued or the adjuster who performed the valuation, as argued by USAgencies. Marsh's claim seems to be typical of the class, no matter the model of the vehicle, the age of the vehicle, the adjuster, or the ultimate valuation. Nor does Marsh appear to have any individualized claims that would make him antagonistic to the classhe certainly appears to be an adequate representative of the class. Therefore, as to these elements, the trial court was not in error.
Article 591(B)(3)
USAgencies also argues that the trial court erred because Marsh failed to meet the commonality or predominance requirements under sub-section (B)(3) of the article. Specifically, it insists that this action involves too many variablesa "myriad of issues"to allow for a finding of commonality or predominance. We disagree.
Under La. C.C.P. art. 591(B)(3), the "predominance requirement," the trial court must determine whether questions of law or fact common to the members of the class predominate *910 over any questions affecting only individual members. While subsection (A)(2) of that article requires that there be questions of law or fact common to the class, which we have already determined there to be, subsection (B)(3) further requires that these common questions predominate over any questions affecting only individual members. As this court previously noted in Howard, supra at 1264:
In determining whether common issues predominate, courts generally engage in a three-step analysis: (1) first, the court must identify the substantive elements of the cause of action; (2) the proof necessary to meet the plaintiff's burden of proof as to those elements must be considered; and (3) the alternative procedural mechanisms for adjudicating the case must be evaluated in terms of promoting judicial economy. The fact that each class member seeks separate damages, or that each claim arose out of separate transactions with the defendant is not necessarily dispositive. The question is whether common issues of law and fact in each class member's claim predominate. "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." (Citations omitted).
We have already discussed the few specific questions that are common to the class members. Despite USAgencies' doggedly advancing its argument to the contrary, we fail to see how an in-depth individual assessment of each valuation for each total loss vehicle would be necessary if the primary question is "did USAgencies properly charge the insured a "detail/prep" fee for his total loss vehicle?" Although the dollar amount for the "detail/prep" fee assessed to each insured might have differed, the general answer to this question will not differ for each individual insured. Furthermore, we believe that class action is a superior method of adjudicating this particular issue. The trial court noted that there could be as many as 9000 class members. Without a class action, many of the class members would have claims too small to justify individual litigation. Clearly, the common issue in this case predominates over any individual claims that might exist, and the trial court did not err in this regard.

Compromise of Claims
USAgencies also submits that the trial court erred in certifying the class, because many of the putative class members' claims have been previously compromised in signed settlement agreements. It specifically argues that a compromise agreement between an insured and its insurer has the force and effect of a final judgment and is res judicata, which precludes litigation of issues the insured should have brought, but failed to assert.
It is well settled that a valid compromise can form the basis of a plea of res judicata, because a compromise has the legal efficacy of a judgment. Brown v. Drillers, XXXX-XXXX (La.01/14/94), 630 So.2d 741. In this case, the record reflects that USAgencies has asserted the exception of res judicata; however, that particular issue has never been specifically addressed by the trial court. As we have noted herein, the issue of class certification is a procedural mechanism which hinges on a determination under La. C.C.P. art. 591. To address the res judicata raised by USAgencies would entail a detailed factual determination and a deeper inquiry into the merits of the claim. The determination of an exception of res judicata lies with the trial court, and we refuse to usurp the province of the trial court in this regard.

Expert Witness
Finally, USAgencies argues that the trial court erred in considering *911 and applying the testimony of Marsh's expert, Tim Ryles, Ph.D., a former Commissioner of Insurance in Georgia. Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. Green v. K-Mart Corp., 2003-2495 (La.05/25/04), 874 So.2d 838. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. Id. The effect and weight to be given to expert testimony rests within the broad discretion of the trier of fact. Williams v. State Farm Mut. Auto. Ins. Co., 36,439 (La.App.2d Cir.10/23/02), 830 So.2d 379.
Here, the trial court made only a fleeting reference to Dr. Ryles' deposition testimony in its reasons for judgment (in a footnote, no less), not even mentioning him by name. It is not readily apparent that the trial court even relied on Dr. Ryles' opinion in reaching a conclusion on the issue discussed. In fact, Dr. Ryles' opinion as noted by the trial court goes to the merits of Marsh's claims against USAgencies, on which the trial court was not making any determination. USAgencies overstates the significance of the trial court's reference to Marsh's expert, which was clearly in its discretion anyway as the trier of fact. This assignment of error has no merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting class certification is affirmed. Costs of this appeal are assessed to USAgencies Casualty Insurance Company.
AFFIRMED.