# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**19-17**


**JOSEPH HARVEY GAUTREAUX, ET AL.**

**VERSUS**

**LOUISIANA FARM BUREAU CASUALTY**

**INSURANCE CO.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 81835
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**VAN H. KYZAR
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Charles C. Garrison**
**Caffery, Oubre, Campbell & Garrison, LLP**
**P. O. Drawer 12410**
**New Iberia, LA 70562-2410**
**(337) 364-1816**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Louisiana Farm Bureau Casualty Insurance Co.**

**Wayne J. Lee**
**Stone, Pigman, Walthers, Wittmann L.L.C.**
**909 Poydras Street, Suite 3150**
**New Orleans, LA 70112**
**(504) 581-3200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Louisiana Farm Bureau Casualty Insurance Co.**

**Andrew L. Plauche, Jr.**
**Plauche, Maselli, Parkerson LLP**
**701 Poydras St., Suite 3800**
**New Orleans, LA 70139**
**(504) 582-1142**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Louisiana Farm Bureau Casualty Insurance Co.**

**George Febiger Riess**
**228 St. Charles Avenue, Suite 1224**
**New Orleans, LA 70130-0000**
**(504) 568-1962**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Joseph Harvey Gautreaux**
     **Susie Lagneaux**
     **Yvette Beauchamp**
     **Wilfred Meaux**

**Kenneth W. DeJean**
**DeJean Law Firm**
**P.O. Box 4325**
**Lafayette, LA 70502-4325**
**(337) 235-5294**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Joseph Harvey Gautreaux**
     **Susie Lagneaux**
     **Yvette Beauchamp**
     **Wilfred Meaux**

**Kenneth David St. Pe**
**St. Pe Law Firm**
**311 W. University Avenue, Suite A**
**Lafayette, LA 70506**
**(337) 534-4043**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Joseph Harvey Gautreaux**
    **Susie Lagneaux**
    **Yvette Beauchamp**
    **Wilfred Meaux**

**Stephen B. Murray, Jr.**
**Murray Law Firm**
**650 Poydras Street, Suite 2150**
**New Orleans, LA 70130**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Joseph Harvey Gautreaux**
    **Susie Lagneaux**
    **Yvette Beauchamp**
    **Wilfred Meaux**

**John Randall Whaley**
**Whaley Law Firm**
**6700 Jefferson Highway, Building 12, Suite A**
**Baton Rouge, LA 70806**
**(225) 302-8810**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Joseph Harvey Gautreaux**
    **Susie Lagneaux**
    **Yvette Beauchamp**
    **Wilfred Meaux**

**KYZAR, Judge.**

Defendant, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), appeals a ruling of the trial court granting Plaintiffs' Motion for Class Certification. Plaintiffs, Joseph Harvey Gautreaux, Susie Lagneaux, Yvette Beauchamp, and Wilfred Meaux, assert that Farm Bureau's reliance on a particular automated computer system to value vehicle total loss claims violates La.R.S. 22:1892(B)(5) and La.R.S. 22:1973 and is being used to systematically underpay insureds. Plaintiffs sought class certification for their claims against Farm Bureau, which was granted. For the following reasons, we affirm the ruling of the trial court.

## FACTS AND PROCEDURAL HISTOY

Plaintiffs were all insured by Farm Bureau and received payment of the considered cash value for a total loss vehicle calculated with the help of an automated computer system called Mitchell Work Center Total Loss (WCTL). Plaintiffs brought the current class action challenging Farm Bureau's use of Mitchell WCTL in valuing first-party vehicle total loss claims, claiming the use of this system fails to comply with the specific requirements of La.R.S. 22:1892(B)(5) and constitutes a breach of Farm Bureau's duty of good faith and fair dealing in violation of La.R.S. 22:1973. Plaintiffs assert that the Mitchell WCTL system is unfairly low in its valuation of vehicles and filed suit in an attempt to recover for alleged underpayment of individual insurance claims.

On September 2, 2014, Mr. Gautreaux filed a Petition for Property Damages, Penalties, Attorney's Fees, and for Class Certification. In the Petition, Gautreaux alleged: (1) that his 2008 Ford pickup truck had been totaled as the result of an accident; (2) that the NADA valuation for his truck was $28,450.00 and that his Mitchell WCTL valuation was $23,790.98; (3) that Farm Bureau "refused to

negotiate in good faith on the difference between the Mitchell Vehicle Valuation Report and the NADA values"; (4) "that the Mitchell Vehicle Valuation Report used by Louisiana Farm Bureau Casualty Insurance Company is unfairly low in its evaluations of vehicle values and that Louisiana Farm Bureau Casualty Insurance Company is aware of this fact"; (5) that Farm Bureau uses the Mitchell WCTL to "intentionally undervalue total loss vehicles through the use of obscure 'adjustments' which systematically reduce values," violating La.R.S. 22:1973; (6) that Farm Bureau "knew or should have known that other valuation systems such as NADA book values or Kelly Blue Book values are the generally accepted valuation tools" and that the Mitchell valuation "does not represent either the actual cash value of the vehicle or the fair market retail value"; (7) that Farm Bureau "violated its duty to adjust claims fairly" under La.R.S. 22:1892(B)(5) and/or La.R.S. 22:1973 because Mitchell WCTL "is not a 'generally recognized used motor vehicle industry source'" for the purposes of La.R.S. 22:1892(B)(5); and (8) that Farm Bureau "employs a system which specifically misleads their insureds, intentionally undervalues their claims, intentionally refuses to negotiate, all of which constitute fraud and unfair trade practices."

On October 16, 2014, Farm Bureau filed Peremptory Exceptions of Res Judicata, No Cause of Action, and No Right of Action. Therein, Farm Bureau asserted the defense of accord and satisfaction, citing the fact that, contrary to Mr. Gautreaux's allegations in the Petition, he and Farm Bureau had engaged in extensive negotiations and reached an agreement on the amount to be paid. It asserted that on September 17, 2013, Farm Bureau issued a check in the amount of $25,193.98 to Mr. Gautreaux, and the check was designated "In Full Payment For: TOTAL LOSS DAMAGES TO 2008 Ford F-250 VIN-2024." Mr. Gautreaux

2

accepted the check, endorsed it, deposited it into his account, and signed the title to the vehicle over to Farm Bureau.

On May 26, 2017, Plaintiffs filed a Supplemental and Amending Petition adding Susie Lagneaux, Yvette Beauchamp, Loretta Jane Meaux, and Wilfred Meaux as Plaintiffs. On September 8, 2017, Farm Bureau filed Peremptory Exceptions of Res Judicata, No Cause of Action, and No Right of Action as to the claims of Loretta and Wilfred Meaux. In its exceptions, Farm Bureau contended that, like Mr. Gautreaux, Mr. Meaux had engaged in negotiations with Farm Bureau with regard to the payments issued to him for his vehicle and that Mr. Meaux had agreed to accept the amounts paid to him. On December 1, 2014, a check in the amount of $2,143.61 was issued to Mr. Meaux for his repairs, and on December 11, 2014, a check in the amount of $8,251.15 and designated "IN FULL PAYMENT OF OWNER RETAINED TOTAL LOSS" was issued to Mr. Meaux. In addition to accepting the checks, Mr. Meaux signed a release acknowledging receipt of payment from Farm Bureau and further releasing Farm Bureau from any further liability in connection with the claim. Both Mr. Gautreaux and Mr. Meaux maintain that they were underpaid for their losses.

On October 24, 2017, the trial court denied the exceptions of Res Judicata, No Cause of Action, and No Right of Action as to the claim of Mr. Gautreaux, to which this court thereafter denied Farm Bureau's application for a supervisory writ. *Gautreaux. v. La. Farm Bureau Cas. Ins. Co.*, 18-575 (La.App. 3 Cir. 6/1/18), 245 So.3d 1046. The supreme court further denied writs. *Gautreaux v. La. Farm Bureau Cas. Ins. Co.*, 18-576 (La. 6/1/18), 243 So.3d 571.

On November 29, 2017, the trial court denied the exceptions of Res Judicata, No Cause of Action, and No Right of Action as to the claims of Loretta and Wilfred Meaux. This court denied supervisory writs on April 6, 2018. *Gautreaux v. La.*

3

*Farm Bureau Cas. Ins. Co.*, 17-1174 (La.App. 3 Cir. 4/6/18), (unpublished writ opinion). The supreme court denied Farm Bureau's writ application. *Gautreaux v. Louisiana Farm Bureau Cas. Ins. Co.*, 18-575 (La. 6/1/18), 245 So.3d 1046.

A hearing on Plaintiffs' motion for class certification was held on April 18 and 19, 2018. The trial court heard extensive arguments of counsel and received many exhibits into evidence. It also heard testimony from numerous witnesses, including multiple expert witnesses. After thorough closing arguments from counsel, the trial court took the matter under advisement.

The trial court issued comprehensive, written Reasons for Judgment on July 23, 2018. A formal judgment was rendered on August 23, 2018, in favor of Plaintiffs, granting Plaintiffs' motion for class certification, designating Joseph Harvey Gautreaux, Susie Lagneaux, Yvette Beauchamp, and Wilfred Meaux as class representatives with the definition of the class to be certified as "[a]ll persons insured by Louisiana Farm Bureau Casualty Insurance Company who have made a claim for first party total loss, which claim Louisiana Farm Bureau Casualty Insurance Company evaluated using Mitchell WorkCenter Total Loss, from July 1, 2013 to the present date (date of class action notice]." Farm Bureau, thereafter, instituted this appeal, setting forth the following assignments of error:

> (1) The Trial Court erred in certifying the Plaintiffs' class because Plaintiffs have not satisfied the commonality, typicality and adequacy of class definition requirements under [La.Code Civ.P.] Article 591(A). In addition, the class does not meet the predominance requirement under Article 591(B)(3) and contravenes the Article 591(C) prohibition against class certification of claims or defenses that are dependent on individualized proof. The Plaintiffs' claims and Louisiana Farm Bureau's defenses cannot be adjudicated on a class-wide basis using common operative facts because the claims and defenses applicable to each putative class member involve issues that must properly be evaluated on an individual basis.

> (2) The Trial Court erred in certifying a class defined as "all persons insured by Louisiana Farm Bureau Insurance Company who have made a claim for a first-party total loss, which claim Farm Bureau Insurance

4

Company evaluated using Mitchell WorkCenter Total Loss ("WCTL") from July 1, 2013 to the present date [date of class notice]." The Petition expressly seeks recovery for persons who were "underpaid" as a result of the use of the Mitchell WorkCenter Total Loss program, but the class definition includes persons who suffered no such alleged underpayment. In addition, La.R.S. 22:1892 does not provide any penalty for a failure to comply with Section (B)(5). Thus, the only possible recovery lies under La.R.S. 22:1973, which requires that each Plaintiff prove both (1) an actual failure to timely pay the amount due and (2) that the failure was arbitrary, capricious, and without probable cause. Plaintiffs propose to establish the existence and quantum of damage by comparing the amount paid by Louisiana Farm Bureau to National Automobile Dealers Association ("NADA") valuations. La.R.S. 22:1892(B) does not require the use of NADA values and NADA does not even purport to identify the actual cash value of any vehicle. Determinations of liability, the fact of damage and the quantum of damage cannot be made using common operative evidence. Thus, every claim requires adjudication on an individual (rather than class-wide) basis.

(3)     This Court erred in failing to address both Louisiana Farm Bureau's defenses of accord and satisfaction and compromise, as well as Plaintiffs' assertions of fraud and duress (none of which can be tried on a class-wide basis). The Trial Court's contrary statement that the case "does not involve" allegations of fraud was patently erroneous. Because these issues were not addressed by the Trial Court, they should be considered de novo on appeal.

## DISCUSSION

Plaintiffs propose recovery under La.R.S. 22:1973 and 22:1892. Louisiana Revised Statutes 22:1973 declares that insurers have an affirmative duty to adjust claims fairly and promptly as part of their more generalized duties of good faith and fair dealing owed to insureds. An insurer who breaches these duties is liable for any damages sustained as a result of the breach. La.R.S. 22:1973. Louisiana Revised Statutes 22:1892 provides that an insurer shall pay to any insured the full amount of a claim due within thirty days of proof of loss from the insured. Insurers are liable for penalties if such payments are not made within thirty days of satisfactory proof of loss if said failure is found to be arbitrary and capricious or without probable cause. *Broussard v. Nat'l Union Fire Ins. Co. of Louisiana*, 94-1445 (La.App. 3 Cir.

5

4/5/95), 653 So.2d 816. Plaintiffs are attempting to show that these statutes have been violated by Farm Bureau on a class-wide basis by its use of the Mitchell WCTL system, allegedly contrary to the requirements of La.R.S. 22:1892(B)(5).

"The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court." *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913, p. 4 (La. 9/9/97), 703 So.2d 542, 544, *reh'g granted in part*, 96-2913 (La. 10/10/97), 710 So.2d 235. "The purpose and intent of class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the representatives who bring the action, but to all others who are 'similarly situated,' provided they are given adequate notice ... and do not timely exercise the option of exclusion." *Id.* "The only issue to be considered by the trial court when ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate," and in doing so, "the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements have been met." *Baker v. PHC-Minden, L.P.*, 14-2243, p. 10 (La. 5/5/15), 167 So.3d 528, 537 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140 (1974)).

The burden of proof to certify and maintain a class action and the standard of appellate review of a trial court decision granting or denying certification of the class action is succinctly set forth as follows:

> In order for class certification to be proper, "the burden is on the plaintiffs to establish that the statutory criteria for a class certification are met." *Duhe v. Texaco, Inc.*, 99-2002, p. 11 (La.App. 3 Cir 2/7/01), 779 So.2d 1070, 1078, *writ denied*, 01-637 (La.4/27/01), 791 So.2d 637; *see also Clark v. Trus Joist MacMillian*, 02-676, 02-512 (La.App.

6

3 Cir. 12/27/02), 836 So.2d 454, 459, *writ denied*, 03-275 (La.4/21/03), 841 So.2d 793 ("Plaintiffs must establish by preponderance of the evidence that each of the elements for class certification has been met."). However, "[t]he district court has wide discretion in deciding whether to certify a class and the decision will not be overturned absent a finding of manifest error or abuse of discretion." *Roberson v. Town of Pollock*, 05-332, p. 9 (La.App. 3 Cir. 11/9/05), 915 So.2d 426, 432, *writ denied*, 06-213 (La.4/24/06), 926 So.2d 550. Further, "[t]he court should err on the side of maintaining the class action since the judge may always modify or amend the class at any time prior to a decision on the merits." *Clark*, 836 So.2d at 459-60 (citing La.Code Civ.P. art. 592 A(3)(c)). Thus, unless the trial court abused its wide discretion in certifying the class in the instant case, the class certification must stand.

*Gunderson v. F.A. Richard & Assocs., Inc.*, 07-331, p. 9 (La.App. 3 Cir. 2/27/08), 977 So.2d 1128, 1136-37, *writs denied*, 08-1063, 08-1069, 08-1072 (La. 9/19/08), 992 So.2d 953.

On appellate review of a class certification, the trial court's factual findings are subject to the manifest error standard; however, the ultimate decision of whether or not to certify the class is reviewed under an abuse of discretion standard. *Doe v. S. Gyms, LLC*, 12-1566 (La. 3/19/13), 112 So.3d 822. Implicit in the deferential standard for class certification is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation. *Id.* The Louisiana Code of Civil Procedure articles governing class actions essentially adopt federal law, and the threshold requirements for class certification are found in La.Code Civ.P. art. 591(A), which states:

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of law or fact common to the class.
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

7

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

If any of the above listed requirements are not present, an action will not be maintained as a class action. *See* La.Code Civ.P. art. 591(B). "A rigorous analysis must be used to determine whether a class action meets the requirements imposed by law, since this procedural device is an exception to the rule that litigation be conducted by and on behalf of the individually named parties only." *Brooks v. Union Pacific R.R. Co.*, 08-2035, p. 10 (La. 5/22/09), 13 So.3d 546, 554. The analysis required for a class action to be maintained necessitates the district court to:

[E]valuate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Upon arriving at an estimate of the class action's overall effectiveness in furthering the intertwined goals, the court must compare this with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device.

*McCastle v. Rollins Envtl. Servs. of La., Inc.*, 456 So.2d 612, 618 (La.1984).

In conducting this analysis, "the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings." *Id.* The party seeking to maintain the class action has the burden of showing all prerequisites of La.Code Civ.P. art. 591(A) were met. *Doe*, 112 So.3d 822. "Those prerequisites are generally referred to as numerosity, commonality, typicality, adequacy of representative parties, and objectively definable class." *Id.* at 830. As such, we first look to each of these five elements to determine if the appropriate analysis was completed by the trial court in certifying the class.

*Numerosity*

8

Louisiana Code of Civil Procedure Article 591(A) permits representative class members to sue if the "class is so numerous that joinder of all members is impracticable." There is no specific number requirement, and this condition cannot be met by merely alleging that a large number of potential claimants exist. *West v. G & H Seed Co.*, 01-1453 (La.App. 3 Cir. 8/28/02), 832 So.2d 274. The core condition of this requirement is not the number of members in the class, but that joinder must be impracticable such that individual suits would burden the courts. *Doe*, 112 So.3d 822.

Farm Bureau began using the Mitchell WCTL program in August 2013 to determine the values of total loss vehicles. As noted by the trial court, Farm Bureau has used the Mitchell WCTL program to determine total loss vehicle values for more than 10,000 claims in Louisiana. Given this number of potential claims, we agree with the trial court that joinder of individual claims is impractical. As such, we find the trial court did not err in its conclusion that the numerosity requirement was satisfied based upon the facts and circumstances of the instant case.

## *Commonality*

The commonality prerequisite requires a party seeking class certification to show that "[t]here are questions of law or fact common to the class." La.Code Civ.P. art. 591(A)(2). A common question is defined as one which, when answered as to one class member, is answered as to all of them. *Dupree v. Lafayette Ins. Co.*, 09-2602 (La. 11/30/10), 51 So.3d 673. Plaintiffs assign numerous questions they assert to be common to every class member including, but not limited to, the following:

(1)     Whether Farm Bureau's use of WCTL violates La.R.S. 22:1892(B)(5).

(2)     Whether Mitchell's algorithm-driven comparable methodology is a "fair market value survey conducted using qualified retail automobile dealers in the local market area as resources" pursuant to La.R.S. 22:1892(B)(5)(a).

9

(3) Whether WCTL is a "generally recognized used motor vehicle industry source" pursuant to La.R.S. 22:1892(B)(5)(b).

(4) Whether the use of a system that violates La.R.S. 22:1892(B)(5) gives rise to penalties under La.R.S. 22:1973.

(5) Whether the application of a condition factor to [comparable vehicles] of unknown condition is an arbitrary and capricious practice under La.R.S. 22:1973.

(6) The criteria for individual class members' entitlement to damages and penalties under La.R.S. 22:1892 and La.R.S. 22:1973.

Farm Bureau, on the other hand, asserts that the central question to be answered for each plaintiff is whether each potential class member was paid the "actual cash value" dollar amount derived by an acceptable method prescribed under La.R.S. 22:1892(B). It argues that the current issues require individualized defenses and details for each of the proposed class members so as to consider the unique evidence on vehicle values and conditions and that each claim has the potential to devolve into a separate mini-trial on each breach of contract, fraud, and penalty claim.

As the trial court noted in its reasons for judgment: "Plaintiffs maintain that the overarching liability question is whether the WCTL program violates 22:1892(B)(5) and, if it does, is Farm Bureau in violation of 22:1973. The answer to both these questions will apply across the board to all the Plaintiffs contained within the class action." The trial court then looked to *Marsh v. USAgencies Casualty Insurance Co.*, 42,176 (La.App. 2 Cir. 5/16/07), 957 So.2d 901, *writ denied*, 07-1286 (La. 10/26/07), 966 So.2d 575, and found that the questions central to the current matter are: "(1) the propriety of Farm Bureau's actions in using the WCTL program to determine the 'actual cash value' of a total loss vehicle, and (2) the potential for penalties under [La.R.S.] 22:1973 if the practice of using the WCTL is found to violate [La.R.S.] 22:1892(B)(5)." Concluding that no individual proof is required to prove liability or causation, as the central issue is whether the Mitchell

WCTL program satisfies the requirements of La.R.S. 22:1892, the trial court reasoned that the resolution of the question can be applied to all class members and can be used by Farm Bureau in dealings with all claimants. We agree.

Farm Bureau also argues that claims for penalties and attorney fees require the trial court to consider the unique circumstances and facts surrounding each individual claim and, as such, are not appropriate for class treatment. This court notes that "penalties under 22:658 [now La.R.S. 22:1892] are not automatically due when an insurer fails to pay within thirty days; the burden is on the insured to show this refusal was arbitrary, capricious, or without probable cause." *Broussard*, 653 So.2d at 818-19. Farm Bureau, therefore, contends that the determination of an insurer's conduct goes to the merits of each individual claim.

The trial court again looked to *Marsh*, 957 So.2d 901, which addressed class certification where the plaintiffs sought penalties under La.R.S. 22:658 (now La.R.S. 22:1892) and La.R.S. 22:1220 (now La.R.S. 22:1973). The *Marsh* court upheld the ruling that the class members had commonality, stating:

> Marsh is not disputing the method of vehicle valuation in general, but only questions one allegedly common factor present for the valuation of totaled vehicles for all class members—i.e., were they assessed a "detail/prep" fee for their totaled vehicle that was never actually detailed or prepped? Answering such a question would not entail extreme individual or case-by-case inquiry. The class members clearly have commonality[.]

*Marsh*, 957 So.2d at 908.

Applying the reasoning of *Marsh*, the trial court determined that the question to be answered in this case was whether "Farm Bureau's across-the-board use of the WCTL system to assess the values of total loss vehicles was a violation of its duty to fairly adjust claims under La.R.S. 22:1892 and/or 22:1973." We agree with the trial court that the answer to that question will apply to all claimants, and as such, this issue is appropriate for class certification under these particular facts and

11

circumstances. It is important to note that should the trial court ultimately find on the merits that Farm Bureau's use of the WCTL system did not violate La.R.S. 22:1892 or implicate penalties under La.R.S. 22:1973, that answer will also apply to all claimants.

Farm Bureau further contends that a claim for fraud is not appropriate for class treatment. Farm Bureau cites *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017) to supports its position. *Slade* is an ongoing case in the federal courts involving similar claims regarding the use of the Mitchell WCTL system. The court in that case held that Louisiana requires proof of actual reliance to prevail on a fraud claim, and as such, "a fraud class action cannot be certified [as] individual reliance will be an issue." *Id.* at 415. In the instant case, the trial court found that Plaintiffs' petition makes no specific allegations of fraud and no evidence was presented at the class certification hearing regarding fraud, and in light of this conclusion, the issue of fraud was not before the court, and thus, was not considered. Accordingly, we do not address this issue here.

The trial court found based upon the foregoing that common questions did exist within the potential class. We find no manifest error with this ruling and, as such, find that Plaintiffs meet the commonality requirement for class certification.

### *Adequacy and Typicality*

Adequacy and typicality are two elements required by La.Code Civ.P. art. 591(A) that are generally addressed together. Adequacy refers to the proposed class representatives and whether or not they are adequate for the class. The following are factors that may be relevant when making an adequacy determination:

(1) The representative must be able to demonstrate that he or she suffered an actual—vis-à-vis hypothetical—injury;

(2) The representative should possess first-hand knowledge or experience of the conduct at issue in the litigation;

12

(3) The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and

(4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.

*Howard v. Willis-Knighton Med. Ctr.*, 40,634, pp. 36-37 (La.App. 2 Cir. 3/8/06), 924 So.2d 1245, 1265, *writ denied*, 06-850, 06-1064 (La. 6/14/06), 929 So.2d 1268, 1271.

Typicality refers to the requirement that class representatives must have claims that are a cross section of, or "typical" of, the claims of the other class members. *Marsh*, 957 So.2d 901. "Typicality for class action certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory." *Id.* at 909.

Here Plaintiffs' claims pertain to one aspect of Farm Bureau's total loss valuation procedure, the use of the Mitchell WCTL system. The claims refer specifically to the use of the Mitchell WCTL system in the valuation of total loss vehicles. The proposed class representatives all had first party total loss claims that were evaluated by Farm Bureau using the Mitchell WCTL automated system. While their claims may differ from other class members in degree, they do not differ in type, and Plaintiffs do not appear to have any individualized claims that would make them antagonistic to the rest of the class. Considering these factors, the trial court concluded that the proposed class representatives met the adequacy requirements. Farm Bureau makes no argument to the contrary. We agree that this element has been met. Plaintiffs' claims also appear to be typical of the class, no matter the

13

model of the vehicle, age of the vehicle, the adjuster, or the ultimate valuation. Therefore, we find the trial court did not err in finding the typicality requirement met.

*Objectively Definable Class*

Louisiana Code of Civil Procedure Article 591(A) requires a fifth element to be met before a class can be certified:

> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

The ascertainable criteria requirement of Article 591(A)(5) ensures that "the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class." *Smith v. City of New Orleans*, 13-802, p. 8 (La.App. 4 Cir. 12/23/13), 131 So.3d 511, 517. Plaintiffs attempting to certify a class must be able to establish a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case. *Id.* In the current matter, Plaintiffs define the proposed class as:

> All persons insured by Louisiana Farm Bureau Insurance Company who have made a claim for first party total loss, which claim Farm Bureau Insurance Company evaluated using Mitchell Work Center Total Loss, from July 1, 2013 to the present date [date of class action notice].

The trial court found in its Reasons for Judgment that Plaintiffs objectively defined their class using ascertainable criteria such that the constituency of the class is easily determined for purposes of any judgment that may be rendered. It further found that Farm Bureau is in possession of objective data which can be used to identify those class members that fall under the aforementioned definition, and as such, found the objective criteria requirement had been met.

14

Plaintiffs assert that Farm Bureau has access to the names and addresses of every individual in the State of Louisiana within its computerized records for whom a total loss vehicle claim based upon the Mitchell WCTL system has been paid. Plaintiffs further assert that Farm Bureau maintains records of the particulars of each of these claims, including date of loss, vehicle make, model, year, equipment, mileage, condition rating, comparable vehicle data used, base price, and valuation established by the Mitchell WCTL system. Farm Bureau offers no argument contrary to the conclusions of the trial court regarding this requirement. Based upon the foregoing, we find no error in the trial court's ruling that the objective criteria requirement has been met.

*Article 591(B)(3): "predominance" and "superiority"*

Louisiana Code of Civil Procedure Article 591 requires that all of the elements of Article 591(A) and at least one element of Article 591(B) be met before a class can be certified. As we have found no error in the trial court's determination that the prerequisites of class certification under La.Code Civ.P. art. 591(A) have been met, we must look to 591(B)(3), which provides:

> An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
>
> . . . .
>
> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### Predominance

The fourth circuit explained the requirement of predominance in *Smith*, 131 So.3d at 520:

> An inquiry into predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Guidry*

15

*v. Dow Chem. Co.*, 12-0436, p. 6 (La.App. 4 Cir. 11/14/12), 105 So.3d 900, 905 (citing *Brooks v. Union Pacific R. Co.*, 08-2035 (La.5/22/09), 13 So.3d 546, 554). Pursuant to art. 591(B)(3), plaintiffs are required to establish only that either common issues of law or common issues of fact predominate over any issues affecting only individual members. In order for a case to proceed as a class action, "there must be 'significant proof,' subject to 'rigorous analysis,' of a common question—one where the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Price*, 11-0853, p. 21, 79 So.3d at 975.

The appellate court in *Howard*, 924 So.2d at 1264, further explained:

> The fact that each class member seeks separate damages, or that each claim arose out of separate transactions with the defendant is not necessarily dispositive. The question is whether common issues of law and fact in each class member's claim predominate. *58 La. Law Rev. 1085* at 1102, n. 102 (citations omitted). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* (citations omitted).

Similar to the commonality requirement from Article 591(A)(2), Plaintiffs maintain that the claims at hand focus entirely on the conduct of Farm Bureau and do not require consideration of the actions of any of Farm Bureau's potential victims. In regards to potential class members whose total loss claims were not undervalued by the Mitchell WCTL system as compared to NADA values, the trial court addressed the issue. It noted Plaintiffs' argument that a common question would arise of whether parties whose claims were not undervalued would still have a claim to penalties due to the alleged unlawful use of the Mitchell WCTL system. Neither La.R.S. 22:1892(B)(5) nor 22:1973 include actual damages as an element of violation. We agree that the question could be presented to the trial court once and could then be answered and applied across the board to the class. Documents attached to Farm Bureau's post-hearing memorandum make clear that potential class members who did not suffer actual damages, as based on comparisons to NADA values, due to the use of the Mitchell WCTL system can be easily identified using Farm Bureau's own data. Where common issues of liability arise, individual issues

regarding an individual class member's entitlement to recover damages will not preclude certification. *Sutton Steel & Supply v. Bellsouth Mobility, Inc.*, 03-1536 (La.App. 3 Cir. 6/9/04), 875 So.2d 1062. The trial court found that the common issues in the instant litigation would still predominate over this one question. We again note the deferential standard for class certification and the trial court's inherent power to manage and control pending litigation and find no manifest error with this ruling. *See Doe*, 112 So.3d 822.

Plaintiffs also assert that Farm Bureau's own records can be used to determine individual damages and penalties should Farm Bureau's use of the Mitchell WCTL system be determined to have violated La.R.S. 22:1892(B)(5) and 22:1973. A very similar claim posited for class action certification was reviewed by the U.S. Fifth Circuit Court of Appeal in *Slade*, 856 F.3d 408. The *Slade* court held that "when plaintiffs argue that damages can be decided on a class-wide basis, plaintiffs must put forward a damage methodology that maps onto plaintiff's liability theory." *Id.* at 410-11. "The fact that each class member seeks separate damages, or that each claim arose out of separate transactions with the defendant is not necessarily dispositive." *Howard*, 924 So.2d at 1264. The court in *Slade*, 856 F.3d at 411, went on to find that the plaintiffs' damages methodology did not preclude class treatment, stating:

> Here, Plaintiffs' liability theory is that Defendant unlawfully used WorkCenter Total Loss (WCTL) to calculate the base value of total loss vehicles. Plaintiffs claim that using WCTL, instead of lawful sources such as the National Automobile Dealers Association (NADA) Guidebook or the Kelly Blue Book (KBB), resulted in their vehicles being assigned a lower base value and accordingly resulted in Plaintiffs receiving lower payouts on their insurance claims.
>
> Plaintiffs' damages theory aligns with that liability theory. Plaintiffs contend that damages can be calculated by replacing Defendant's allegedly unlawful WCTL base value with a lawful base value, derived from either NADA or KBB, and then adjusting that new base value using Defendant's current system for condition adjustment.

17

Plaintiffs contend that such a calculation can be done on a class-wide basis because Defendant already possesses NADA scores for most of the class, NADA or KBB scores are otherwise publicly available, and Defendant already has condition scores for each vehicle. In fact, Plaintiffs' damages expert opined that she could apply Defendant's condition adjustment to Defendant's NADA scores or publicly available NADA or KBB data. This damages methodology fits with Plaintiffs' liability scheme because it isolates the effect of the allegedly unlawful base value. That is, by essentially rerunning Defendant's calculation of actual cash value but with a lawful base value, Plaintiffs' damages theory only pays damages resulting from the allegedly unlawful base value.

Plaintiffs here are putting forth a very similar damage methodology as that upheld in *Slade*. As noted by the trial court, if Plaintiffs prevail on the common question of whether La.R.S. 22:1892 and/or 22:1973 was violated by Farm Bureau's use of the Mitchell WCTL system, then individual issues of entitlement to and the amount of damages can be resolved by reference to objective claims data available for every class member. Farm Bureau's records already contain the data comparing the claims adjusted using the Mitchell WCTL system versus NADA for each potential class member, which can then be used to determine an actual cash value base to be adjusted for condition using Farm Bureau's objective condition factor determination.

Based upon the foregoing, the trial court found that the common questions of Farm Bureau's alleged liability, and whether such liability allows Plaintiffs to recover penalties under La.R.S. 22:1892(B)(5) and 22:1973, predominate over any questions affecting individual members, as any individual questions are easily answered using readily available, objective data and criteria. We find no error with this ruling.

### *Superiority*

The superiority requirement of La.Code Civ.P. art. 591(B)(3) refers to the determination of whether class action treatment would be the superior method for

18

the fair and efficient adjudication of a controversy. When a common character of rights exist, a class action is superior to other available adjudicatory methods in effectuating substantive law and promoting judicial efficiency and individual fairness. *Chalona v. La. Citizens Prop. Ins. Corp.*, 08-257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494.

Plaintiffs assert that class certification is superior to individual litigation in the case at hand. The claims can be managed by reference to readily available computer data already in Farm Bureau's possession and would be more efficient than engaging in hundreds of repetitive lawsuits that would present the risk of inconsistent adjudications between similarly situated claimants. It also provides a possible means of recovery to numerous potential class members whose claims would not warrant the expense of litigation, particularly if penalties under La.R.S. 22:1973 are found to be unavailable. Further, as noted by the trial court, if it is found that Farm Bureau did not violate La.R.S. 22:1892(B)(5) and 22:1973 through its use of the Mitchell WCTL system, the class certification will provide Farm Bureau with a single binding and final determination to that effect.

The trial court found that a class action is superior to other available methods under the facts and circumstances of this litigation. We agree. It will provide fair and efficient adjudication of the controversy without the need for repetitive liability trials with the potential for inconsistent results. *See Marsh*, 957 So.2d 901.

## DISPOSITION

For the reasons stated above, we conclude that the trial court did not manifestly err in its judgment, having correctly and fairly determined the common question to be answered and the class certification issues in this case. Accordingly,

19

we affirm the judgment of the trial court and assess costs to Louisiana Farm Bureau

Casualty Insurance Company.

**AFFIRMED.**